JOURNAL ENTRY AND OPINION
Defendant Anthony Batey appeals from his convictions for abduction and felonious assault. For the reasons set forth below, we affirm.
On December 8, 1998, defendant was indicted for kidnapping and felonious assault with repeat violent offender specifications in connection with an attack on an eight-year-old girl. The matter proceeded to a jury trial on February 5, 1998. For its case, the state presented the testimony of the girl, her brother, her mother, and the Cleveland police officers involved in the arrest.
Following a voir dire during which the girl was determined to be competent, she testified that the incident occurred on the day of the anniversary celebration at the church where her grandfather is pastor. She and her brother Gerard left the church before the service to change clothes. They walked to their grandparents' home, adjacent to the church parking lot to change and as they returned to the church, Gerard was ahead of her. A man who was standing with two other men grabbed her around the neck and called her the "B" word. Gerard saw what had happened and he picked up a frisbee from the ground and hit the man in the head with it. The man then let the girl go and she and Gerard ran to the church.
The girl testified that after the police arrived, she, her mother and brother drove with the officers and were asked to identify three men. The girl was crying so Gerard identified the men.
Gerard testified that he was one of the speakers at the anniversary celebration. At approximately 6:00 p.m., he and his sister changed clothes at their grandparents' house. As they returned to the church, Gerard noticed defendant with a red scarf around his neck and two other men in the church parking lot. Defendant grabbed Gerard's sister around the neck and held a silver handled knife to her neck. He called her the "B" word and said that he would kill her if she moved. Gerard ran behind a car and found his brother's frisbee. He hit defendant in the back of the head with the frisbee. Defendant then let go of the girl and she and Gerard ran to the church. Their mother called the police and the police later drove them a few blocks away to view three suspects who had been apprehended.
The officers illuminated the suspects' faces with a light. Gerard testified that the second suspect shown to the children was defendant. At the scene, and again in court, Gerard identified defendant as the man who held a knife to his sister's neck. Gerard testified that defendant was still wearing the red scarf while at the scene.
Cathy Johnson, the children's mother, testified that she is the secretary of Second New Hope Missionary Baptist Church and her father is the pastor of the church. On October 24, 1997, the church was having an anniversary program which was scheduled to start at 7:00 p.m. At approximately 6:00 p.m., she instructed her children to go to their grandparents' home to change their clothes. She then watched as the children headed toward the house. At this time, the lights of the parking lot had come on. When the children returned, her daughter was crying and said that someone tried to take her.
The pastor called the police and the police responded to the church approximately ten minutes later. While at the church, the officers learned that a team on helicopter patrol had detained three suspects and they drove the group a few blocks away to determine whether the children could identify the perpetrator.
Cleveland Police Officer Frank Friedel of the Aviation Unit testified that on October 24, 1997, he was on routine helicopter patrol. He and his partner overheard a request for a zone car to respond to a possible abduction in the area of East 116th
Street. The aviation unit reported that it was near the area and would assist. The unit began to look for suspects with red bandanas then received revised information that the suspects were wearing dark clothing with red scarves. The helicopter hovered in the area of the church on East 116th Street. A few seconds later, they noticed three men walking in the area of East 117th Street and Parkview Avenue. All had something red around their necks. The aerial officers illuminated the group until the zone car arrived a few minutes later.
Cleveland Police Officer Anthony Harper testified that he was working zone car patrol and assisted in the search for three suspects in connection with a reported abduction in the area of East 116th Street. Officer Harper received information from the aviation unit that three men were on Parkview Avenue. Defendant was wearing a three-quarter length coat with a red collar. Following a pat down for weapons, the officers learned that defendant had a knife in the right pocket of his jacket.
Other police transported the children and their mother to this location and defendant was identified as the girl's assailant.
Defendant elected to present evidence. Defendant's brother, Ronald Batey, testified that he and defendant live with their father on Parkview Avenue. He established that On October 24, 1997, he and defendant performed work at a home in East Cleveland until approximately 6:00 p.m. Ronald then went to the store and when he returned, police were at his father's home.
Defendant's father testified that after returning from work defendant stated that he was going to meet a man to whom he owed money. Mr. Batey later learned from Ronald that defendant had been arrested.
Defendant testified that he is a landscaper and also does carpentry and plumbing work. Defendant finished work at approximately 6:00 p.m. He then went to find a man to whom he owed money. He saw the man's brother, then observed a helicopter hovering over him. More police arrived a short time later and he and another man were arrested.
Defendant stated that he had a knife but he explained that he uses it in connection with his job. He knew one of the other men who was also arrested but he denied attacking the girl and denied ever seeing her before.
Defendant was subsequently convicted of abduction, as a lesser included offense of kidnapping, and felonious assault. The trial court subsequently sentenced him to concurrent five year terms of incarceration on both offenses. Defendant now appeals and assigns three errors for our review.
Defendant's first assignment of error states:
 THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL AS THE EVIDENCE PRESENTED BY THE STATE WAS INSUFFICIENT TO SUSTAIN A CONVICTION FOR THE OFFENSE OF FELONIOUS ASSAULT.
In this assignment of error, defendant asserts that the trial court erred in failing to acquit him of felonious assault because the state failed to prove that he caused or attempted to cause physical harm to the girl.
With regard to procedure, we note that the standard to be employed by a trial court in deciding a Crim.R. 29 motion is set out in State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus as follows:
 Pursuant to Crim.R. 29 (A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.
With regard to the substantive aspects of defendant's contentions we note that R.C. 2903.11 defines the crime of felonious assault and provides as follows:
(A) No person shall knowingly:
(1) Cause serious physical harm to another;
 (2) Cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code. (Emphasis added.)
As a result, contrary to defendant's argument, the prosecution is not required to establish defendant caused any type of I!physical harm" to the victim to support a conviction for felonious assault. Rather, an attempt to cause physical harm by means of a deadly weapon or dangerous ordnance is sufficient to constitute felonious assault under R.C. 2903.11 (A) (2). SeeState v. Brown (1994) 97 Ohio App.3d 293, 299; accord State v.Workman (1992), 84 Ohio App.3d 534, 537 (evidence supported finding that defendant attempted to physically harm police officer where officer testified that during foot chase, defendant stopped and turned, and, holding knife in his left hand, stepped toward officer, whereupon officer jumped and tackled defendant to ground); State v. Zachary (1987), 31 Ohio App.3d 264, 265
(brandishing of knife constituted attempt to cause physical harm sufficient to support conviction for felonious assault with deadly weapon)
In State v. Brown, supra, this court held that the evidence was sufficient for conviction of felonious assault with a knife where defendant kicked in door to victim's apartment, threw her to the floor causing her to hit her head, threatened to kill her, held knife to her throat, and destroyed her telephone.
Similarly, in this instance, the state presented evidence from which reasonable minds could conclude that defendant grabbed the girl, held a knife to her throat, and threatened to kill her if she moved, and thereby attempted to cause her physical harm with a knife. The first assignment of error is accordingly without merit.
Defendant's second assignment of error states:
 THE VERDICT OF THE JURY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND MUST BE REVERSED.
Defendant next contends that his conviction is against the manifest weight of the evidence.
In State v. Hirtzinger (1997), 124 Ohio App.3d 40, 45, the court described the role of an appellate court in evaluating challenges to the weight of the evidence as follows:
 An appellate court reviewing the weight of the evidence sits as a "thirteenth juror" and may, within its discretion, act upon a disagreement with the jury's decision. [State v.] Thompkins [(1997), 78 Ohio St.3d 380] * * * at 388, 678 N.E.2d at 547-548, citing Tibbs v. Florida (1982), 457 U.S. 31, 41-43, 102 S.Ct. 2211, 2218-2219, 72 L.Ed.2d 652, 661-662. The appropriate standard of review requires a court to examine the entire record, "weig[h] the evidence and all reasonable inferences, conside[r] the credibility of witnesses, and determin[e] whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720; Thompkins, supra, at 387, 678 N.E.2d at 547. "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id.
In this instance, the evidence demonstrated that a man wearing a red scarf and who was with two other men grabbed the girl, held a knife to her throat, and threatened to kill her. The incident was immediately reported to the police and this report was overheard by the aviation unit which was in the general area. Within minutes, the aviation unit located three men with red around their necks. The girl's brother identified defendant as the assailant and the police also found a knife in defendant's pocket. The evidence of record supports the jury's conclusion. We are therefore unable to conclude that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. This assignment of error is without merit.
Defendant's third assignment of error states:
 DEFENDANT-APPELLANT'S RIGHT TO A FAIR AND IMPARTIAL TRIAL WAS MATERIALLY PREJUDICED BY THE INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS SIXTH AMENDMENT RIGHTS.
Within this assignment of error, defendant maintains that his trial counsel was ineffective for failing to seek suppression of the "cold stand" identifications.
In order to establish a claim of ineffective assistance of trial counsel, the defendant must make a two-part showing:
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable.
Strickland v. Washington (1986), 466 U.S. 668, 687.
In In the Matter of Jenkins (May 2, 1996), Cuyahoga App. No. 69022, unreported, this court held that a "cold stand," or one-on-one show up identification may be suggestive under certain circumstances; however it is impermissible only where there is a substantial likelihood of misidentification, citing State v.Freeman (June 22, 1995), Cuyahoga App. No. 67383, State v.Madison (1980), 64 Ohio St.2d 322 and Neil v. Biggers
1972), 409 U.S. 188.
In determining whether counsel was ineffective for failing to suppress the identification, the Supreme Court in State v. Lott
(1990), 51 Ohio St.3d 160, 175, stated as follows:
 Lott claims defense counsel should have moved to suppress Coleman's eyewitness identification of Lott. However, Lott has not demonstrated that the trial court would have granted such a motion. Indeed Coleman had several opportunities to observe Lott, whose suspicious actions drew Coleman's attention. She called the police twice and, as a trained artist, even sketched Lott's face. Coleman identified Lott from a photo array conducted on July 28, before Lott's arrest. Further, Coleman described a red and black running suit Lott was wearing, which was later found in Lott's car.
 To suppress identification testimony, there must be "a very substantial likelihood of irreparable misidentification." Simmons v. United States
(1968), 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247. The focus, under the "totality of the circumstances," is upon the reliability of the identification, not the identification procedures. Manson v. Brathwaite (1977), 432 U.S. 98, 113, 97 S.Ct. 2243, 2252, 53 L.Ed.2d 140. (Accord Neil v. Riggers [1972], 409 U.S. 188, 196-197, 93 S.Ct. 375, 380-381, 34 L.Ed.2d 401; State v. Moody
[1978], 55 Ohio St.2d 64, 9 O.O.3d 71, 377 N.E.2d 1008.) Any discrepancies between the police officers' and Coleman's testimony do not indicate suggestive identification techniques. Nor does Lott refute the underlying facts supporting the identification's reliability. Therefore, defense counsel's motion to suppress the identification would have been futile and thus Lott has no sound basis to assert ineffective assistance here.
Accord State v. Keith (1997), 79 Ohio St.3d 514, 535.
In this instance, the evidence established that there were two lights in the church parking lot (Tr. 71) and it was well-lit. (Tr. 248). The evidence also indicated that Gerard observed three men in the church parking lot. He clearly saw the man who grabbed his sister and clearly saw that he held a silver handled knife to her throat. Gerard then ran up to the man and hit him with a frisbee. Gerard later told the police that the man had on a red scarf. Within minutes, the aviation unit, spotted three men in the area and illuminated them until the zone cars arrived. At this time, defendant was wearing a jacket with a red collar and also had a knife. Gerard identified defendant during a "cold stand" confrontation. As we have noted the "cold stand" was not, in and of itself, a suggestive identification technique. From the foregoing, and from the totality of the circumstances, we are unable to conclude that there was a very substantial likelihood of irreparable misidentification. Therefore, if defendant's trial counsel had filed a motion to suppress the identification, there is no indication that the motion would have been meritorious.
Accordingly, counsel did not err in failing to seek suppression of the identification, and consequently was not ineffective. SeeState V. Robinson (1996), 108 Ohio App.3d 428, 433 (counsel was not required to file meritless motion simply for the sake of placing it on the record to avoid charge of ineffective assistance). The third assignment of error is without merit.
Affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SPELLACY, J., AND SWEENEY, J., CONCUR.
 _________________________ ANN DYKE PRESIDING JUDGE