64

The State of Ohio, Appellee, *v.* Moody, Appellant.

[Cite as State v. Moody (1978), 55 Ohio St. 2d 64.]

(No. 77-1225—Decided July 12, 1978.)

*Mr. John S. Cheetwood,* prosecuting attorney, and *Mr. Gary F. Kuns,* for appellee.

*Messrs. Nusbaum, Silverman, Phillips & Wittenberg* and *Mr. Sheldon S. Wittenberg,* for appellant.

*Per Curiam.* In his first three propositions of law appellant contends that it was reversible error for the trial court to admit in evidence certain inculpatory statements made by him to the police as well as other evidence elicited or obtained from him during his detention, since he was not provided his federal constitutional and state statutory (R. C. 2935.20) rights to counsel; that there was no voluntary waiver of the *Miranda* rights by the accused in this cause, since he was not permitted to make telephone calls after his detention by the police; and, irrespective of the fact that no pretrial motion to suppress was filed on these issues, the above issues were not waived, since the issues

only became known during trial and "immediately upon its emergence at trial defense counsel preserved the issue by objection."

The court finds the last issue to be dispositive of appellant's three propositions of law.

Crim. R. 12(B) provides:

"Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. The following must be raised before trial:
" * * *

"(3) Motions to suppress evidence, including but not limited to statements and identification testimony, on the ground that it was illegally obtained. * * *"

Crim. R. 12(G) provides further, in pertinent part: ·

"Failure by the defendant to raise defenses or objections or to make requests which must be made prior to trial * * * shall constitute waiver thereof, but the court for good cause shown may grant relief from the waiver."

This court held in paragraph three of the syllabus in *State* v. *Wade* (1978), 53 Ohio St. 2d 182, that:

"The failure to move within the time specified by Crim. R. 12(C) for the suppression of evidence on the basis of its illegal obtainment constitutes a waiver of the error."

In the instant cause, appellant filed a pre-trial motion to suppress certain identification testimony to be introduced at trial on direct examination of the complainant. During the "suppression" hearing, the defense had an opportunity to question three police officers who were with the defendant on the day of his arrest and were involved in the identification process. In cross-examining Lt. Dean Gerkens, the defense asked the witness numerous questions concerning whether the defendant was permitted to make a telephone call, to which the witness responded at one point that the defendant was not permitted to do so until after charges were filed. The defense specifically commented:

"Q. [Mr. Wittenberg] Okay, so from 2:30 [p. m.] to

maybe around 6:00 o'clock Mr. Moody was not allowed to make a phone call, is that correct?"

"A. [Lt. Gerkens] Yes."

Appellant made no motion to suppress any statements made by the defendant to the police at this time, the court denied his motion to suppress the identification testimony, and trial commenced. During trial, the defense, throughout its cross-examination of the three police officers whom it had originally questioned at the suppression hearing, asked several questions of each concerning whether the defendant was properly informed of his *Miranda* rights and properly given the opportunity to obtain counsel under R. C. 2935.20. However, it was not until after the questioning of six additional witnesses that the defense submitted a motion to strike the testimony of the three police officers containing statements made to them by the defendant while he was in custody on April 20, 1976.

We find no reversible error committed by the trial court in denying appellant's motion. The defense had ample opportunity before trial to determine whether the police authorities adequately afforded the defendant his constitutional and statutory rights to counsel. Through the cross-examination of Lt. Gerkens, the defense became aware of the fact that Moody was not given the opportunity to make telephone calls on the day of his arrest. However, the defense did not pursue the issue at the time.

Clearly, by failing to timely file his motion to suppress before trial, the appellant waived any error. See *United States* v. *Sisca* (C. A. 2, 1974), 503 F. 2d 1337, 1349, certiorari denied 419 U. S. 1008; *United States* v. *Farnkoff* (C. A. 1, 1976), 535 F. 2d 661, 663-664; and *Commonwealth* v. *Hubbard* (1977), 472 Pa. 259, 372 A. 2d 687, 692-694.

Appellant's first three propositions of law are, therefore, overruled.

In his fourth proposition of law, appellant contends that it was reversible error for the trial court to admit in evidence the testimony of the complainant identifying Moody as her attacker.

The allegedly suspect identification procedure involved the showing of five photographs to the complainant on the day after the attack. Complainant stated that before she attempted to identify the defendant's picture, the police had told her that a suspect had been picked up who resembled the image of the composite picture drawn up according to her description, and that they had taken some photographs of him. Of the five pictures to be used in the identification process, all were black males. However, in four of the photographs, the individuals were standing in front of a height chart, and only the defendant appeared to fit the height description furnished by the complainant. Also, of the five photographs, appellant was the only individual who apparently had a moustache.

Although the identification procedure may have contained notable flaws, this factor does not, *per se*, preclude the admissibility of the subsequent in-court identification. See *State* v. *Barker* (1978), 53 Ohio St. 2d 135, 142-143. As noted in *Manson* v. *Brathwaite* (1977), 432 U. S. 98, 53 L. Ed. 2d 140, 154, " * * * reliability is the linchpin in determining the admissibility of identification testimony * * *." The factors affecting reliability include "* * * the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil* v. *Biggers* (1972), 409 U. S. 188, 199. Thus, although the identification procedure is suggestive, so long as the challenged identification itself is reliable, it is admissible. *Manson, supra,* at 151.

In the instant cause, the complainant testified that she was with the defendant on the night of the attack for approximately 35 to 40 minutes. The night was clear and the moon was out. At the place where she was attacked there was a tall night light illuminating the surrounding area where she was sitting. Thus, the complainant had a sufficient opportunity to view the defendant at the time of the crime.

With respect to the degree of attention focused by complainant on her assailant, the complainant testified that throughout her ordeal, she attempted to observe any noticeable features of the assailant.

The complainant demonstrated a high level of certainty both during the confrontation process and at trial. Michael Grimes, an officer who had observed the complainant as she studied the five photographs, noted that she started at the top of the stack, pulled the defendant's picture out and placed it on her knee, looked through the remaining pictures, and then identified the defendant. There were no apparent signs of indecision. At trial, when confronted upon cross-examination with certain discrepancies in her description of the assailant, she testified that her description was based on approximations, and that she was sure her assailant was Paul Moody.

With respect to the accuracy of the witness' prior description of the criminal, appellant points up several parts of the record indicating that complainant's identification was not reliable. For example, during a hearing on appellant's motion for new trial, a hospital nurse testified that she heard the complainant say that her assailant was three inches taller than herself and that he probably was not a student. According to appellant, his height is 5′3″, complainant's height is 5′6″. At trial, a policewoman who interviewed the complainant on the day after the incident testified that the complainant could not describe the assailant. An officer who also was present at the interview confirmed this testimony. Also the complainant's description of the assailant's height and weight did not correspond to defendant's own description of his height of 5'3" and weight of 115.

However, other evidence points to the accuracy of complainant's description. On the day after the attack, the complainant was shown approximately 150 photographs of which about 40 percent were of black males. Complainant could not identify her assailant from this group of photographs. On that same day, complainant was able to give a description of the man to Officer Grimes. She stated

that her attacker was a black male, 5'6" tall, weighed 150 lbs., and had a moustache. He wore a dark suitcoat or sportcoat with a white shirt, brown shoes, and a silver-mesh band watch. Complainant also assisted the police in drawing up a composite picture. It was this description which lead to the eventual identification of the defendant by the complainant.

Although the complainant's description of her assailant's height and weight did not correspond to defendant's own description of his height of 5'3" and weight of 115, her description of the moustache, shoes, and watch were apparently accurate.

In reviewing the circumstances surrounding the identification of the appellant in this cause, we are not convinced that there was "a very substantial likelihood of irreparable misidentification." *Simons* v. *United States* (1968), 390 U. S. 377, at page 384. Although there was some evidence of discrepancies on the part of the complainant in her identification of the appellant as her assailant, these questionable areas in complainant's description were particularly for the jury to decide. As noted in *Manson, supra,* at page 155:

"We are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they they cannot measure intelligently the weight of identification testimony that has some questionable feature."

Thus, the court finds that the complainant's opportunity to observe her assailant and to subsequently identify the defendant with certainty at trial were not outweighed by the corrupting effect that the challenged identification may have had on complainant's in-court identification.

Appellant's fourth proposition of law is overruled. The judgment of the Court of Appeals is therefore affirmed.

*Judgment affirmed.*

O'NEILL, C. J., HERBERT, CELEBREZZE, W. BROWN, P. BROWN, SWEENEY and LOCHER, JJ., concur.