OPINION
The present appeal arises from the decision of the Mahoning County Court of Common Pleas sentencing Joe Young following a finding of guilt on one count of felonious assault with an accompanying firearm specification. For the reasons set forth below, the decision of the trial court is affirmed.
 I. FACTS
On May 24, 1996, Joe Young (appellant) was indicted by the Mahoning County Grand Jury on one count of felonious assault in violation of R.C. 2903.11(A)(2), an aggravated felony of the second degree. Said count was accompanied by a firearm specification pursuant to R.C. 2941.141. The indictment arose from allegations that appellant had shot an individual during the early morning hours of April 10, 1996.
Following the completion of all pre-trial matters, the case proceeded to a trial by jury on December 2, 1996. At the close of the state's case as well as at the close of appellant's case, motions for judgment of acquittal were orally made by appellant's counsel. The basis for said motions was that the victim's eyewitness statement standing alone was insufficient to sustain a conviction. The trial court overruled appellant's motions on both occasions. Appellant's trial concluded on December 5, 1996 at which time the jury returned a guilty verdict on the one count of felonious assault and its accompanying firearm specification. In its December 18, 1996 judgment entry, the trial court sentenced appellant to an indefinite term of incarceration of eight to fifteen years on the felonious assault conviction and a three year term of incarceration on the firearm specification which was to be served prior to and consecutive with the term imposed for the felonious assault. This timely appeal followed on December 24, 1996.
 II. ASSIGNMENT OF ERROR
Appellant's sole assignment of error on appeal reads:
 AS A MATTER OF LAW, THE EVIDENCE PRESENTED BY THE STATE AND RELIED UPON BY THE JURY IN THE CONVICTION OF APPELLANT JOE L. YOUNG WAS NOT SUFFICIENT."
Appellant asserts that the state failed to carry its burden of proof when it relied solely upon the testimony of the victim in order to sustain the conviction. Other than this testimony, appellant indicates that absolutely no physical evidence was introduced to support the state's position. For instance, no weapon was ever discovered, no fingerprints were identified and no leads were available to law enforcement absent the victim's testimony. This scant amount of evidence is viewed by appellant as insufficient to permit the matter to be submitted to a jury.
In addition to the lack of physical evidence, appellant focuses on the alleged unreliability of the victim's statement. Appellant argues that at the time the offense was committed it was 3:45 a.m. and was snowing. The area where the crime allegedly occurred was dimly lit and thus provided little or no opportunity for the victim to identify the offender. Second, the victim admittedly smoked crack cocaine during the evening hours preceding the shooting. This activity is viewed as having further impaired the victim's ability to make a trustworthy visual identification. Additionally, the nature of the victim's wounds is argued to support a finding that the identification was in error. According to the victim's account of the shooting, he was shot in the upper calf as well as the tail-bone. This type of evidence would support a finding that the victim was running away from the shooter and therefore, did not have an opportunity to view who in fact was doing the shooting. Lastly, appellant asserts that the stress surrounding the entire incident was such as to significantly reduce the reliability of any visual identification. This is magnified by the fact that an actual identification to the police did not take place until seven days after the shooting.
Based upon the totality of these circumstances, appellant argues that the evidence offered by the state and relied upon by the jury was insufficient. Such heavy reliance upon a questionable identification is viewed as being inherently dangerous in the absence of some corroborating evidence.
 A. APPLICABLE LAW
When a defendant challenges the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime [proven] beyond a reasonable doubt." State v. Getsy (1998), 84 Ohio St.3d 180,193 quoting State v. Jenks (1991), 61 Ohio St.3d 259, paragraph 2 of the syllabus. Whether or not the state's evidence is sufficient to support the jury's verdict against a defendant is a question of law dealing with adequacy. State v. Thompkins
(1997), 78 Ohio St.3d 380, 386. However, a verdict will not be disturbed on sufficiency grounds unless the appellate court holds that reasonable minds could not reach the conclusion reached by the trier of fact. Jenks, supra at 273. The relevant offense to which the sufficiency analysis applies in the present case is that of felonious assault pursuant to R.C. 2903.11(A)(2) which provides as follows:
(A) No person shall knowingly:
* * *
 (2) Cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code."
As to the issue of the reliability of a witness identification of a defendant, this court has previously recognized that reliability must be determined based upon the totality of the circumstances. State v. Poole (1996),116 Ohio App.3d 513, 522 citing Neil v. Biggers (1972),409 U.S. 188; State v. Waddy (1992), 63 Ohio St.3d 424. Factors which are relevant to the totality of the circumstances inquiry include the following: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the identification. Id. Reliability is the linchpin to determining whether identification testimony should be admitted. State v. Jells (1990), 53 Ohio St.3d 22,27 citing State v. Moody (1978), 55 Ohio St.2d 64.
 B. ANALYSIS
In the present case, our determination as to the sufficiency of the evidence hinges upon the reliability of the victim's identification of appellant. Based upon the factors set forth inNeil, supra it must be held that in fact the identification was reliable.
The victim in the present case testified that even prior to viewing appellant, he knew appellant's identity from his voice alone as he had been acquainted with appellant for approximately ten years. As the victim walked between two apartment buildings, he heard appellant arguing with two other individuals. The victim then testified that appellant came into view and his identity was readily determinable as appellant was standing directly beneath a light on one of the apartments. Upon seeing the victim, appellant called out to him by name and began to approach him requesting money which was allegedly owed. Some brief words were then exchanged as the victim walked away from appellant. When the victim refused to come up with any money, appellant shot him in the upper calf. At that time, the victim testified that he turned towards appellant and exclaimed A[y]ou shot me in my leg" at which point appellant continued to shoot striking the victim a second time. (Tr. 310).
This course of events is particularly indicative of the reliability of the witness identification. The victim had ample opportunity to view appellant when he was talking to two other individuals, as he approached requesting money and as he shot and hit the victim as he was fleeing. This testimony is particularly persuasive on the issue of reliability due to the fact that the victim had known appellant for a prolonged period of time prior to this incident. We are not presented with a case where a victim was attacked by an unknown assailant under the cover of darkness with little or no opportunity to make a positive identification. On the contrary, having known the perpetrator for an extended period of time prior to the commission of the crime provides one of the strongest arguments in support of the accuracy of the identification. See State v. Barnett (1990), 67 Ohio App.3d 760,768.
Additionally, the victim never wavered in his contention that it was appellant who had shot him. On numerous occasions throughout the transcript the victim reiterated his certainty as to the identity of the shooter. Moreover, prior to appellant's indictment the victim positively identified appellant from an array of photographs put together by the Youngstown Police Department. The Youngstown Police Detective who put together the line-up testified at trial that the victim picked out appellant without any hesitation.
Appellant's attempts to undermine the reliability of the identification process are without merit as they all rely upon witness credibility. It is well settled that issues of witness credibility are within the province of the trier of fact. Statev. Hill (1996), 75 Ohio St.3d 195, 205 citing State v. DeHass
(1967), 10 Ohio St.2d 230, 231. The rationale behind this precedent is that the trier of fact occupies the optimal viewpoint for observing and assessing the demeanor of the witnesses as they testify. Myers v. Garson (1993), 66 Ohio St.3d 610, 615; SeasonsCoal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
Appellant first asserts that poor observation conditions existed at the time of the shooting thereby detracting from the reliability of the identification by the victim. For instance, appellant indicates that the crime occurred at 3:45 a.m., the area was dimly lit and it was snowing. However, the victim testified at trial that he had no difficulty identifying appellant at the time the crime was committed as the area was well lit. According to the victim's recollection of the scene, there was a light on each apartment building as well as street lights in the immediate vicinity which provided sufficient lighting. Furthermore, the victim testified that appellant was standing directly under one of the lights when he first viewed him. The victim's position is further strengthened by the fact that he testified he had perfect, uncorrected vision at the time of the incident. These facts serve to support the identification of appellant.
Next, appellant points to the victim's crack use the evening prior to the attack as evidence that a reliable identification could not be made. However, the victim's testimony at trial serves to dispel any negative impact his drug use would have on his ability to perceive events. The victim volunteered the fact that he smoked crack at approximately 8:30 p.m. on April 9, 1996. However, he further testified that the effects of the drug wear off quickly and any physical side-effects would have vanished within ten minutes of the actual use. After using the drug at 8:30 p.m., the victim testified that no other drugs or alcohol were ingested prior to the shooting which occurred seven hours later. The victim indicated that this one instance of drug use which had such fleeting effects was not capable of causing any physical impairment at a time so distant from the actual use.
Appellant further argues that the victim was unable to perceive the shooting as he was running away from the shooter. This proposition is supported by the fact that the victim was wounded in the calf and tail-bone. However, the victim's testimony again created a question of credibility for the trier of fact when he stated that he turned towards appellant after the first shot struck him in the calf. At that point appellant continued to shoot thereby striking the victim in the tail-bone. Such testimony provides a rational explanation as related to the victim's ability to verify that appellant was doing the shooting.
Finally, appellant focuses on the lapse in time between the shooting and the identification. While the victim was shot on the morning of April 10, 1996, he did not identify appellant by name until April 17, 1996. Furthermore, the array of photographs was not shown until April 19, 1996. This span of time is argued to have resulted in a decay of the victim's ability to recall the events and provide a reliable identification. However, the victim again was able to provide a sufficient explanation during trial so as to overcome appellant's position. The victim indicated that he immediately knew appellant was the shooter due to the fact that the two had been acquainted for such a long period of time. However, the identity of the shooter was not revealed to the Youngstown Police Department until the victim's release from the hospital on April 17, 1996 for two reasons. First, the victim testified that he feared for the safety of his girlfriend and her two children who lived in the area where the shooting occurred. Consequently, he did not want to reveal the name of the shooter until he was able to get out of the hospital and ensure the safety of these individuals. Second, although the victim had been acquainted with appellant for a period of approximately ten years, he only knew him as Dirty Joe." Therefore, he wanted to verify appellant's last name prior to informing the police. Such reasoning provides a valid explanation for the lapse in time between the incident and the identification.
Furthermore, while the length of time between the crime and the identification certainly is a factor as to reliability, a span of seven days is not sufficient to overcome the victim's familiarity with appellant and certainty as to the identification. For instance, in Waddy, supra the Ohio Supreme Court held that a span of time of almost two months between the crime and the identification was not sufficient to create a substantial likelihood of misidentification. Id. at 440. An even more extreme case was before the United States Supreme Court in Neil, supra
when it was held that a seven month gap in time between the crime and the identification was still not sufficient to overcome other factors which strongly supported reliability.
In light of the totality of the circumstances surrounding the identification, it must be held that such was reliable. The victim was acquainted with appellant, had the opportunity to view appellant and was certain that his identification was correct. Any doubts raised by appellant address strictly the credibility of the victim's testimony which is for the jury to decide. DeHass,supra. Having determined that the identification was reliable under the totality of the circumstances, this court must conclude that the state presented sufficient evidence to sustain a conviction of felonious assault and the accompanying firearm specification.
As discussed, all evidence presented at trial must be construed in favor of the prosecution in determining whether a rational trier of fact could find the essential elements of the crime proven beyond a reasonable doubt. Getsy and Jenks, supra. In so construing the victim's testimony, it is clear that appellant knowingly caused physical harm to appellant when he shot a firearm in his direction on a number of occasions thereby causing two gunshot wounds. Therefore, appellant's sole assignment of error is overruled.
For the foregoing reasons, the decision of the trial court is hereby affirmed.
 ______________________ VUKOVICH, J.
Cox, P.J.,
Waite, J.,