OPINION
Defendant-appellant Tyrelle Gilbert appeals from a judgment rendered by the Jefferson County Common Pleas Court upon a jury verdict finding him guilty on six separate counts for which he was indicted. For the following reasons, the judgment of the trial court is affirmed.
 STATEMENT OF THE FACTS
On November 6, 1998, after being bound over from the Juvenile Division, appellant was indicted on two counts of possession of drugs in violation of R.C. 2925.11(A), two counts of felonious assault in violation of R.C. 2903.11(A)(2) with specifications, one count of improperly handling a firearm in a motor vehicle in violation of R.C.2923.16(A), and one count of discharging a firearm at or into a habitation in violation of R.C. 2923.161(A) along with a firearm specification. These charges arose from events occurring on three separate occasions.
First, appellee alleged that on February 24, 1998, appellant attempted to cause physical harm to Norman Brown with a firearm. After a confrontation with Brown, appellant drove away warning, "I've got something for you. I'll be back." Appellant returned with a firearm which he fired in Brown's direction.
Appellee also alleged that on September 3, 1998, appellant was a passenger in a vehicle that drove past police officers at 1:35 a.m. The officers stopped the vehicle and ordered appellant to get out. While exiting the vehicle, appellant attempted to discard a plastic bag containing numerous pieces of a white rock substance, later confirmed to be crack cocaine. At that point, appellant was arrested. While searching appellant, the officers found a bag of marijuana.
Finally, appellee alleged that on September 21, 1998, appellant drove to Demetrius Harrison's house. Appellant fired a gun at Harrison who was peering his head through a window of his home.
Appellant entered a plea of not guilty. However, a jury found him guilty on all counts. He was sentenced accordingly. Appellant filed a motion for acquittal and a new trial. His motion was denied. This appeal followed.
 ASSIGNMENT OF ERROR NUMBER ONE
Appellant sets forth six assignments of error on appeal. His first assignment of error alleges:
 "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION BY FINDING APPELLANT GUILTY OF POSSESSING CRACK COCAINE OVER THE BULK AMOUNT, AND THEREAFTER DENYING APPELLANT'S MOTIONS FOR ACQUITTAL OR NEW TRIAL, AS THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. (TR 491 AND MARCH 10 TR 10)."
At trial, Jeffrey Houser, an expert in the field of drug analysis, testified that he analyzed the white rock-like substance seized by police. He tested four of the 14 rocks. He concluded that all 14 were indeed crack cocaine. Appellant argues that by only testing four of the rocks, Houser relied on conjecture to conclude that the other ten rocks were crack cocaine.
 LAW AND ANALYSIS
As this court has indicated on numerous occasions in the past, weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." State v. Stallings (2000), 89 Ohio St.3d 280,289, quoting State v. Thompkins (1997), 78 Ohio St.3d 380, 387. Reviewing courts will not reverse a decision on manifest weight grounds unless after evaluating the record, weighing the evidence and inferences that can be reasonably drawn therefrom, and considering the witnesses' credibility, the court determines that the trial court "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Thompkins, supra, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. Only in exceptional cases where the evidence weighs heavily against the conviction should the court grant a new trial on manifest weight grounds. Id. To reverse a jury verdict as against the manifest weight of the evidence, a unanimous concurrence of all three appellate judges is required. Id. at 389.
Ohio Courts have consistently upheld random sampling as an acceptable method to allow an inference that the untested substance consists of the same chemical makeup as the tested portion when both appear to be similar in nature. State v. Earle (1997), 120 Ohio App.3d 457; In re Lemons
(1991), 77 Ohio App.3d 691; State v. Mattox (1983), 13 Ohio App.3d 52. Appellant argues that he rebutted this inference. He claims that Houser did not establish that his sample method was based upon any scientifically accepted standards. However, Houser testified that he tested four of the 14 rocks because the normal procedure for random sampling is to test the square root of the total number of rocks. InLemons, supra, the court noted that the expert did not follow the "square root" procedure when sampling a portion of rocks suspected to contain cocaine. Nonetheless, the court upheld the random sampling of less than the square root. It claimed to be unaware that the "square root" methodology was mandated by any scientific body. Notwithstanding this, the court held that the random sampling was "substantial evidence from which the trial court could properly conclude beyond a reasonable doubt that all [of the rocks] contained cocaine." Id. at 696.
Similarly, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice. Even if we assume arguendo that Houser did not establish that the "square root" methodology is based on scientifically accepted standards, the law of this state recognizes random sampling as a reliable means by which illegal drugs may be tested. Earle, Lemons and Mattox, supra. Thus, the jury was entitled to infer that the untested rocks were crack cocaine because the tested rocks were proven to be such based on credible evidence. Appellant's first assignment of error is found to be without merit.
 ASSIGNMENTS OF ERROR NUMBERS TWO AND THREE
Appellant's second and third assignments of error have a common basis in law and fact and will therefore be discussed together. They respectively allege:
 "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION BY FINDING APPELLANT GUILTY OF FELONIOUS ASSAULT OF NORMAN BROWN AND THE FIREARM AND MOTOR VEHICLE SPECIFICATIONS, AND THEREAFTER DENYING APPELLANT'S MOTIONS FOR ACQUITTAL OR NEW TRIAL, AS THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. (TR 492 AND MARCH 10 TR 10)."
 "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION BY FINDING APPELLANT GUILTY OF IMPROPERLY HANDLING FIREARMS IN A MOTOR VEHICLE, AND THEREAFTER DENYING APPELLANT'S MOTIONS FOR ACQUITTAL OR NEW TRIAL, AS THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. (TR 492 AND MARCH 10 TR 10)."
 LAW AND ANALYSIS
At trial, Norman Brown and his girlfriend Devon Johnson, both claiming to have known appellant for years, testified regarding the events that occurred on February 24, 1998. They recalled a confrontation between Brown and appellant earlier in the day. Later, appellant drove up the street where Brown and Johnson were standing. They each testified that, with a gun, he fired several shots toward a group of bystanders and Brown.
Appellant argues that his conviction for the events that took place on February 24, 1998 were based entirely on the in-court identifications made by Brown and Johnson. He contends that other witnesses testified as to Brown's reputation for dishonesty and motive to lie. He also argues that Brown's testimony was suspicious. Brown claimed that he was standing on one side of the street with his cousin, and the group of people at whom appellant shot was standing on the other side. He also testified that appellant only fired shots out of the passenger side window. When confronted with this inconsistency on cross-examination, Brown stated that he ran across the street before appellant's car was in position for the shooting. Appellant argues that such testimony demonstrates Brown's lack of credibility. However, on direct examination, Brown was asked, "[a]nd when [appellant] came up you walked back across the street?" He replied, "yeah." (Tr. 201). Therefore, contrary to appellant's suggestion, Brown's testimony was not inconsistent.
Moreover, the determination regarding witness credibility is primarily for the trier of fact. State v. Hill (1996), 75 Ohio St.3d 195, 205, citing State v. DeHass (1967), 10 Ohio St.2d 230, 231. The rationale behind this precedent is that the trier of fact occupies the optimal viewpoint for observing and assessing the demeanor of the witnesses as they testify. Myers v. Garson (1993), 66 Ohio St.3d 610, 615; SeasonsCoal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80. The jury in this case heard the testimony regarding Brown's character. Despite such attacks, they chose to accept Brown's identification of appellant as the individual who fired shots at him. Our role is not to second- guess the jury's wisdom. Therefore, appellant's second and third assignments of error are without merit.
 ASSIGNMENTS OF ERROR NUMBERS FOUR, FIVE AND SIX
Appellants fourth, fifth and sixth assignments of error have a common basis in law and fact and will therefore be discussed together. The respectively allege:
 "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION BY FINDING APPELLANT GUILTY OF FELONIOUS ASSAULT OF DEMETRIUS HARRISON AND THE FIREARM AND MOTOR VEHICLE SPECIFICATIONS, AND THEREAFTER DENYING APPELLANT'S MOTIONS FOR ACQUITTAL OR NEW TRIAL, AS THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. (TR 492 AND MARCH 10 TR 10)."
 "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION BY FINDING APPELLANT GUILTY OF IMPROPERLY DISCHARGING A FIREARM INTO A HABITATION OR SCHOOL AND ITS FIREARM SPECIFICATIONS, AND THEREAFTER DENYING APPELLANT'S MOTIONS FOR ACQUITTAL OR NEW TRIAL, AS THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. (TR 493 AND MARCH 10 TR 10)."
 "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION BY ADMITTING AN IN COURT IDENTIFICATION OF APPELLANT AS THE ASSAILANT, AFTER IT WAS DEMONSTRATED THAT THE WITNESS' OUT OF COURT IDENTIFICATION WAS MADE BY A HIGHLY SUGGESTIVE PHOTO ARRAY IDENTIFICATION AND WITHOUT A FINDING OF CLEAR AND CONVINCING EVIDENCE THAT THE IN COURT IDENTIFICATION WAS INDEPENDENT IN ORIGIN, AND THEREAFTER DENYING APPELLANT'S MOTIONS FOR ACQUITTAL OR NEW TRIAL. (TR 313-316 AND MARCH 10 TR 22)."
Prior to trial, Demetrius Harrison identified appellant from a photo array as the man who shot at him. He later identified appellant at trial. The trial court excluded the photo identification as Harrison claimed to know five of the six men pictured. Appellant was the only person in the array he did not know. The trial court, however, allowed the in-court identification to stand, stating, "I'm not knocking out the in- court cause I'm confident from watching this guy that his ID is good." (Tr. 315).
Appellant contends that his conviction for the crimes committed on September 21, 1998 were attributed solely to Harrison's in-court identification. He argues that Harrison could only have recognized appellant from the suggestive pre-trial photo array. He insists that the identification did not originate from an independent observation. We disagree.
 LAW AND ANALYSIS
With respect to a witness' identification of a defendant, this court has recognized that reliability must be determined based upon the totality of the circumstances. State v. Poole (1996), 116 Ohio App.3d 513,522, citing Neil v. Biggers (1972), 409 U.S. 188; State v. Waddy (1992),63 Ohio St.3d 424. Factors which are relevant to the totality of the circumstances inquiry include the following: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the identification. Id. Reliability is the linchpin to determining whether identification testimony should be admitted. State v. Jells (1990), 53 Ohio St.3d 22,27, citing State v. Moody (1978), 55 Ohio St.2d 64.
At trial, Harrison testified that several people in a blue, four-door Dynasty drove up to his house and blew the horn. He claimed that he went to the window to see who it was, and appellant, who was standing outside the car, fired two shots at his house. Harrison insisted that he saw what the shooter looked like, and identified appellant as such.
1. OPPORTUNITY TO VIEW THE CRIMINAL
Appellant notes that Harrison testified that he only looked out the window for a few seconds. Once he saw appellant cock the pistol, he got on the floor. Appellant contends that Harrison thus did not have an opportunity to view his assailant.
We find, however, that Harrison's opportunity to view the criminal was sufficient. He testified that he stuck his head out of the window when he heard a horn. He watched appellant get out of the driver's side of the car and walk to the front of it. Enough time lapsed for appellant to ask Harrison, "you got a problem with my dudes?" (Tr. 289). He claimed to get a good look at appellant. He only ducked when he saw appellant brandish a gun. While all of this may have occurred in only a few seconds, there was ample opportunity for Harrison to view appellant from his window.
2. WITNESS' DEGREE OF ATTENTION
Appellant notes that one witness testified that Harrison was high from smoking marijuana at the time of the shooting. Such testimony, however, does not destroy the reliability of Harrison's identification. Harrison testified that he was not drinking or using drugs the night of the shooting. The jury was entitled to believe his claim.
3. ACCURACY OF THE PRIOR DESCRIPTION
In the police report, Harrison described his assailant as a black male, 6 feet one inch in height. He estimated that his assailant was between 180 and 200 pounds. Appellant points to nothing in the record to indicate that this does not accurately describe him.
4. LEVEL OF WITNESS' CERTAINTY
Appellant contends that Harrison was only certain that appellant was his assailant after looking at the photo array that was excluded from evidence. He claims that Harrison testified that he was "* * * sure it was him now (in court) from looking at that picture." (Appellant's brief at 16). However, appellant is attempting to mislead this court. Those were not Harrison's words; they were the words of appellant's counsel. On direct examination, Harrison identified appellant as the man who shot at him. Appellant's counsel then cross-examined him on the events that happened that evening. He slipped in the question, "and you're sure it was him now from looking at that picture?" (Tr. 298). Harrison replied, "yes." (Tr. 298). Contrary to appellant's assertion, this does not establish that Harrison did not recognize appellant by viewing him on the date of the shooting. It merely suggests that the individual that shot at him was the same individual that he identified in the photo array.
Moreover, Harrison was confident that he properly identified his assailant. He testified that he saw what the shooter looked like. He claimed to get a good look at him. He recalled that the shooter was wearing dark clothes. He noted that the assailant had an Afro hair cut, three inches off his head. He testified that he got a good look at the gun which he described as a 9mm. 380. Having observed such details, Harrison unequivocally identified appellant as the shooter.
5. LENGTH OF TIME
The shooting took place on September 21, 1998. Harrison gave his in-court identification of appellant on March 3, 1999, more than five months later. In Waddy, supra at 440, the Ohio Supreme Court held that a period of nearly two months between the crime and identification was insufficient to create a substantial likelihood of misidentification. The United States Supreme Court has held that a seven-month gap between the crime and the identification was not sufficient to overcome other factors that strongly supported reliability. Neil, supra.
Nonetheless, appellant argues that Harrison's identification was unreliable. He notes that Harrison claimed that appellant arrived in a Dynasty, while the police report indicates that Harrison told police that the car was a New Yorker. When asked about this inconsistency, however, Harrison replied, "New Yorker and Chrysler Dynasty, they're the same car, just a different name." (Tr. 301). All along, Harrison maintained that the car that pulled up to his house was blue. Both models are similar in design. Such a mistake in name did not render Harrison's testimony unreliable. To the contrary, under the totality of the circumstances, the record reveals that Harrison's in-court identification of appellant as his assailant was very reliable. Thus, the trial court did not clearly lose its way and create a manifest miscarriage of justice. Thompkins, supra. As such, appellant's fourth through sixth assignments of error are found to be without merit.
For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Cox, P.J., concurs. Waite, J., concurs.