DECISION AND JUDGMENT ENTRY
This is an accelerated appeal from the judgment of the Ottawa County Court of Common Pleas which suppressed the identification testimony of the state's witness. Pursuant to Crim.R. 12(J), the state appealed the decision of the trial court. For the reasons that follow, we affirm the decision of the trial court.
This matter arose as a result of two controlled buys of crack cocaine and the identification of appellee, Antonio Mitchell, by the purchaser, Greg Elswick. The following facts are relevant to this appeal.
Two controlled buys of crack cocaine were made on September 17, 1998 and November 25, 1998 from a person known as "Zack" or "White Boy" (collectively referred to as "Zack") by witness Greg Elswick. Elswick testified that he knew the seller through a Mr. Gilmer, also known as "Pops", for about a year before the buys. Elswick further testified that he saw Zack "quite frequently" the year before the buys as the two of them would hang out together and drive from Toledo to Port Clinton on a daily basis to allow Zack to "do his business." Elswick testified to seeing Zack hundreds of times during the year preceding the buys. Elswick testified that he did not know Zack as Antonio Mitchell, but did identify appellee in court as the person he knew as Zack. Elswick further testified that it is common in the drug culture not to know someone's real name as nick-names are often used.
Elswick explained that he discovered Zack's identity when Elswick worked on a car owned by Zack. Elswick testified that Zack was selling a car to Lamont Gilmer and Zack wanted Elswick to check the car out for him. According to Elswick, he got the Vehicle Identification Number ("V.I.N.") off of the vehicle and provided it to Detective Doug St. Clair who used it to pull up a picture of appellee. On January 15, 1999, St. Clair showed Elswick the picture and Elswick testified that he identified the picture as being that of the person he knew as Zack.
When asked how long Elswick was in the room during the drug transactions, Elswick testified, "Sometimes I stayed all night." Upon clarification that the state was referring only to the controlled buys, Elswick testified that he would just go in, make his purchase, leave, and turn it over to the police.
On cross-examination, Elswick testified that he was previously convicted of burglary, perjury, drug trafficking and falsification, and became a confidential informant to avoid prosecution for a charge of tampering with evidence, from an incident where he swallowed a crack pipe. When asked, Elswick denied having been in a fight with appellee a week or two prior to his identification of the photograph. With respect to the controlled buys, Elswick testified that he would make the buys and then be debriefed by the officers regarding the purchase and provide a physical description of the seller of drugs. After the September 17, 1998 buy, Elswick described Zack as "a light-skinned black man with corn rows in his hair, nicely dressed, approximately five-eight to five-nine in height." After the November 25, 1998 buy, however, Elswick described Zack as being six feet, one inch tall. Elswick explained that he "just gave a rough idea of what [Zack] was * * * who he was and what he was."
After hearing Elswick's testimony and the testimony of Detective St. Clair, the trial court held that the photo identification violated "every protocol for a photo array or a photo identification" and, by showing Elswick only one photograph, the identification was tainted because "that is all he remembers, and when he testifies at trial, almost certainly in his subconscious or even in his conscious mind, the only thing he has in front of him is that single photograph." The trial court went on to state that the difficulties with the photo array "could be overcome if in fact it was Mr. Elswick that brought up the V.I.N. number and had in fact known the Defendant for over a year." The trial court, however, found Elswick was not credible:
 "* * * Mr. Elswick is not a believable witness. He has two felony convictions, truth being the element, one of the elements in each of the convictions. Falsification and perjury.
 "Further, he has an admitted violation for destruction of evidence. Again, that is an offense that goes to truthfulness and reliability. In addition to that, he has other drug-related felony convictions himself.
 "To have daily contact with the Defendant for a year and not to know his name, drug culture or no drug culture, is simply incredulous.
 "The two narrative descriptions, the earlier of the two descriptions has the suspect at five-eight or five-nine and at 120 to 130 pounds. That is a small person, a small frail person.
 "Now in two months, did he experience such a growth spurt that he went up to six-two and gained 70 pounds? That is just not believable.
 "Last, but not least, this is the picture of a full-bodied, fleshed-out man with a very athletic neck. This is a frail little person.
 "The identification is tainted. It will be suppressed, and the Court will not permit an in-court identification."
In its judgment entry, the trial court stated:
 "The Court finds that there is sufficient and overwhelming evidence that the photo identification of the Defendant was fatally flawed and must be suppressed and that the confidential informant's memory has become tainted to the point where he would not be able to make an in-court identification of the Defendant and such an identification will not be permitted."
The state appealed this decision of the trial court and raises the following assignment of error:
 "THE COURT ORDERED [sic] IN SUPPRESSING THE IN COURT INDENTIFICATION [sic] OF THE DEFENDANT BY THE CONFIDENTIAL INFORMANT."
The state argues that the trial court erred in suppressing Elswick's identification because, based on Elswick's familiarity with Zack, the procedure employed by the police was not so impermissibly suggestive of appellee's guilt as to be unreliable.
Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. State v. Davis (1999), 133 Ohio App.3d 114. When considering a motion to suppress, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of a witness. State v.Smith (1997), 80 Ohio St.3d 89, 105; State v. Fanning (1982),1 Ohio St.3d 19, 20. Accordingly, this court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Rhude (1993), 91 Ohio App.3d 623, 626; State v.Guysinger (1993), 86 Ohio App.3d 592, 594. Accepting the facts as found by the trial court as true, the appellate court must then independently determine as a matter of law, without deferring to the trial court's conclusions, whether the facts meet the applicable legal standard. Statev. Klein (1991), 73 Ohio App.3d 486, 488.
A photographic identification will only be suppressed if the procedure employed was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. State v. Hill
(1987), 37 Ohio App.3d 10, 14, citing, Simmons v. United States (1968),390 U.S. 377, 384. Even if an identification procedure contained notable flaws, this factor alone does not per se preclude the admissibility of a subsequent in-court identification. State v. Moody (1978),55 Ohio St.2d 64, 67, citing, State v. Barker (1978), 53 Ohio St.2d 135,142-143. "[R]eliability is the linchpin in determining the admissibility of identification testimony * * *." Moody at 67, citing Manson v.Brathwaite (1977), 432 U.S. 98. Courts must therefore apply a two-pronged analysis in determining admissibility of an identification: (1) whether the initial identification procedure was unnecessarily or unduly suggestive; and (2) whether the identification was reliable,i.e., whether the out of court suggestive procedure created a very substantial likelihood of misidentification. See State v. Barnett
(1990), 67 Ohio App.3d 760, 768. Hence, even though the identification procedure was suggestive, "so long as the challenged identification itself is reliable, it is admissible." Moody, supra at 67, citing, Manson,supra, at 151.
Factors which affect reliability include the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of the witness's prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. Moody, supra at 67, citing, Neil v. Biggers (1972),409 U.S. 188, 199-200. Additionally, a strong factor in determining the reliability of the identification is the situation where the witness already knew the perpetrator before the crime was committed. Barnett,supra at 768.
In this case, the state argues that showing Elswick a single photograph was not unduly suggestive because he knew the suspect very well, but he simply did not have his real name. As such, the photograph was simply used to determine the suspect's true identity. We agree with the trial court that if the evidence supported the fact that Elswick knew the suspect prior to the controlled buys, had actually provided the officers with a V.I.N. number from a vehicle owned by the suspect, and had provided accurate descriptions of the suspect following the buys, then the identification would have been reliable, despite the suggestive nature of the photograph array. However, the trial court found Elswick's testimony was not credible because he was a known perjurer, and the facts he testified to were unbelievable. The trial court is in the best position to make these determinations and, therefore, we will not overturn this finding by the trial court. See Smith, 80 Ohio St.3d at 105, and Rhude,91 Ohio App.3d at 626.
Accordingly, we agree with the trial court that showing a witness a single photograph of a suspect is unduly suggestive. Moreover, we find that the identification is not otherwise reliable because there is no credible evidence that Elswick knew the suspect prior to the controlled buys, Elswick's description of Zack varied after each buy, and there is no credible evidence that the V.I.N. number provided to the officer came from a vehicle actually owned by the suspect. Accordingly, we find that the trial court did not err in suppressing the in-court identification of appellee as there was a substantial likelihood of misidentification. The state's sole assignment of error is therefore found not well-taken.
On consideration whereof, this court finds substantial justice has been done the party complaining and the judgment of the Ottawa County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to the state of Ohio.
Melvin L. Resnick, J., Mark L. Pietrykowski, J., JUDGES CONCUR.
 ____________________________ KNEPPER, P.J.