[Cite as *In re J.W.J.*, 2013-Ohio-1609.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

IN THE MATTER OF:

J.W.J. II

ALLEGED DELINQUENT CHILD.

CASE NO. 1-12-29

O P I N I O N

Appeal from Allen County Common Pleas Court
Juvenile Division
Trial Court No. 2012 JG 29376

Judgment Affirmed

Date of Decision: April 22, 2013

APPEARANCES:

*Andrew Van Horn* for Appellant

*Christina L. Steffan* for Appellee

**WILLAMOWSKI, J**.

{¶1} Defendant-Appellant, JWJ, a juvenile, appeals the judgment of the Allen County Court of Common Pleas, Juvenile Division, adjudicating him a delinquent child for having committed aggravated robbery with a firearm specification. On appeal, Appellant contends that the trial court erred in allowing identification of the Appellant based on a Facebook picture and that the trial court's findings were against the manifest weight of the evidence. For the reasons set forth below, the judgment is affirmed.

{¶2} On January 10, 2012, a complaint was filed alleging Appellant was a delinquent child by reason of committing aggravated robbery in violation of R.C. 2911.01(A)(1), a felony of the first degree if committed by an adult, along with a firearm specification pursuant to R.C. 2941.145. Appellant, who was born in July 1996, entered a denial to the charge and specification.

{¶3} The adjudicatory hearing was held on April 26, 2012. The State's primary witness was Billie VanSchoyck ("Mr. VanSchoyck" or "the Victim"). Mr. VanSchoyck testified that on the evening of October 23, 2011, while walking home from a relative's home, he was robbed at gunpoint by Travis Cook ("Travis") and two other individuals. Mr. VanSchoyck was taking a shortcut through an alley near Elizabeth Street in Lima, when he saw three individuals approaching him. Mr. VanSchoyck recognized Travis and was about to say "hi"

to him, when one of the other individuals, later identified as Appellant, pointed a gun at him. (Tr. 13-15).

{¶4} Mr. VanSchoyck described the gun as being either a 9mm or a 45 caliber weapon that was gold-colored with a black handle. Mr. VanSchoyck testified that Appellant told Mr. VanSchoyck to "give him everything he had." (Tr. 16) When Mr. VanSchoyck indicated that he didn't have anything, Appellant cocked the gun and ejected a bullet. Mr. VanSchoyck then went into his pockets and pulled out his cigarettes and a lighter and handed them over, along with his cell phone. The third person, who was not identified, took the items. Mr. VanSchoyck continued to keep his eyes on Appellant, who was still pointing the gun at him. (Tr. 15-17)

{¶5} After taking the items, the three turned around and began to walk away, which was in the same direction Mr. VanSchoyck was traveling. Appellant then turned around and pointed the gun at Mr. VanSchoyck again and told him to walk the other way. (Tr. 17-180) Mr. VanSchoyck noticed that they were across the street from Travis' mother's house. When Mr. VanSchoyck was almost out of the alley, he turned around and said, "Travis, I know who the fuck you are." (Tr. 19) Travis then asked how he knew him, and Mr. VanSchoyck explained that he was Bruce VanSchoyck's brother.[1] (*Id.*) Travis then took the gun, pointed it at

---

[1] Mr. VanSchoyck's brother, Bruce, had dated Travis' mother sometime in the past, and Mr. VanSchoyck testified that he was familiar with the Cook family.

Mr. VanSchoyck, and asked him again how he knew him. Again, Mr. VanSchoyck explained he was Bruce VanSchoyck's brother. Travis then stated that he should shoot him. (*Id.*) Mr. VanSchoyck told Travis that he didn't want any trouble. (*Id.*) After that, the three walked away. Mr. VanSchoyck went to a near-by gas station and called the police.

{¶6} The police arrived and took Mr. VanSchoyck's statement. They searched the area to see if any of the items may have been discarded and they looked in the alley to see if they could locate the ejected bullet, but nothing was found. The police also went to Travis' mother's home and knocked at the door. Although they heard movement inside, no one answered.

{¶7} Mr. VanSchoyck had described Appellant to the police, but he did not know his name or who he was. However, Mr. VanSchoyck testified that, a short time later, someone gave him Appellant's name and told him that it was the Appellant who had been with Travis that evening. (Tr. 22) Apparently Travis and Appellant were talking with a girl about what they had done, and that girl happened to be Mr. VanSchoyck's brother's wife's niece. (*Id.*) Now that Mr. VanSchoyck had Appellant's name, he wanted to be sure it was the correct person before he reported it to the police. Mr. VanSchoyck testified that he looked up Appellant's Facebook page. (Tr. 30) Mr. VanSchoyck recognized Appellant from his pictures on the Facebook page as being the person who had held the gun on

him. Once he verified that the person whose name he had been given as a "tip" was indeed the person who had been involved in the robbery, he gave that information to the police. (Tr. 30-31)

{¶8} Approximately a week after the robbery, the police recovered a gun matching the description of the firearm used to rob Mr. VanSchoyck. Deb Newland, who lived in the vicinity of Elizabeth Street, testified that she heard gunshots on Halloween night. When she looked outside to see what was happening, she saw about a half-dozen youths running away. (Tr. 37) She testified that she saw a young man matching Appellant's description run between the houses and toss something down behind her neighbor's air conditioning unit. He continued to run, briefly fell down, and then ran away. (Tr. 38) Ms. Newland called the police and they found a gun matching the description of the weapon Mr. VanSchoyck had described, lying on the ground in the wet leaves by the air conditioning unit.[2] Ms. Newland identified Appellant in court as the person she had seen throw something down by the air conditioner. (Tr. 37) However, on cross-examination, she acknowledged that she could not be one-hundred percent certain that Appellant was that same individual and that she could not see what it was that had been thrown. (Tr. 42)

---

[2] State's Exhibits 1 and 2 were pictures showing the gun lying on the ground next to an air conditioning unit. State's Exhibit 3 was the gun.

{¶9} In addition to the testimony of Mr. VanSchoyck and Ms. Newland, the State offered the testimony of several of the police officers who were involved in the investigation and the testimony of the BCI&I forensic firearms specialist who had tested the gun and found that it was operable. Investigator Robert Stoodt, a juvenile investigator for the Lima Police Department, was in charge of the robbery investigation. (Tr. 66) Inv. Stoodt provided detailed testimony concerning the investigation, corroborating much of Mr. VanSchoyck's testimony. He also testified concerning his questioning of Appellant about the robbery and the Halloween evening incident. (*See* State's Exhibit 4, DVD recording of Inv. Stoodt's conversations with Appellant.) On the DVD, Appellant denied being involved in the robbery and claimed that he did not have anything to do with the gun found on Halloween by the air conditioner. However, he did acknowledge that he was running around that night in the vicinity where Ms. Newland believed she saw him, and that he fell down at one point. (Ex. 4)

{¶10} After hearing all of the testimony, the trial court took the matter under advisement to review the evidence and then reconvened the following day to announce its decision. The trial court found beyond a reasonable doubt that Appellant had committed the offense of aggravated robbery, with an operable handgun, according to the applicable law.

{¶11} The trial court found Appellant to be delinquent and set the matter for a dispositional hearing, which was held on May 30, 2012. The trial court committed Appellant to the Department of Youth Services for an indefinite term for a minimum period of one year and a maximum period not to exceed the age of 21 years for the aggravated robbery offense. Appellant was also committed to an additional period of one year for the firearm specification, to be served consecutively with and prior to the commitment imposed for the underlying offense of aggravated robbery. (May 31, 2012 Dispositional Judgment Entry)

{¶12} Appellant now brings this appeal, raising the following two assignments of error for our review.

**First Assignment of Error**

**The trier of fact erred by allowing the ID of the Defendant by the Victim based on a Facebook picture, which was not produced at trial.**

**Second Assignment of Error**

**The convictions were against the manifest weight of the evidence.**

{¶13} In the first assignment of error, Appellant complains that the admission of the testimony concerning Mr. VanSchoyck's identification of Appellant by using his Facebook photograph (which "was never produced at trial nor provided as part of discovery") lacked foundation and violated Evid.R. 1002

and 1003.[3] (*See* Appellant's Br., p. 2) Appellant claims that he was denied the opportunity to confront the "evidence" being presented against him. Appellant argues that the trial court erred when it allowed the identification of Appellant by Mr. VanSchoyck based upon a Facebook page that was not produced at trial.

{¶14} The evidentiary rules cited by Appellant do not support his argument and are inapplicable in this context. The State was not trying to prove the contents of any writing or photograph. Mr. VanSchoyck's identification of Appellant at trial was based upon having seen the Appellant hold a gun on him during the robbery, and he testified that he clearly remembered what Appellant looked like and was certain that Appellant was the same person who had brandished the gun during the robbery.

{¶15} Mr. VanSchoyck's identification of Appellant on the record was when he pointed him out in the courtroom. The testimony concerning Mr. VanSchoyck's utilization of Facebook to *verify* that the name given to him was truly the person who had robbed him was merely to explain how he came to learn Appellant's name. At the hearing, Mr. VanSchoyck testified that he had seen Appellant's face for three-to-five minutes that night, and he had given the police a description of Appellant as "a big, light-skinned male, black and light in color, and

---

[3] Evid.R. 1002 ("Requirement of original") and 1003 ("Admissibility of duplicates") are part of Article X, pertaining to "Contents of Writings, Recordings and Photographs." Evid. R. 1002 states that, "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required * * *." Evid.R. 1003 states that a "duplicate is admissible to the same extent as an original" unless there is a genuine question as to the authenticity of the original or where it would be unfair to admit the duplicate in lieu of the original.

he had his hair out in an afro." (Tr. 23) He only looked up his picture on Facebook in order to confirm that the name he was given was the same person, and it was. No photographic or documentary evidence was used or admitted at trial.

{¶16} Appellant also tries to support his argument by citing to the cases of *Manson v. Brathwaite*, 432 U.S. 98 (1977) and *State v. Moody*, 55 Ohio St.2d 64 (1978). However, in both of those cases, it was the *police department* who provided the photographs to the witness, and the issue involved was whether the identification procedures were improperly suggestive so as to violate the defendants' due process rights.

{¶17} This case is factually different in that it was not the police who showed the photograph to the witness; rather, it was the witness who sought out a photograph to ensure that the name he gave to the police was the person he saw that night. According to *State v. Brown*, 38 Ohio St.3d 305 (1988), if there was no state action involved in the pretrial identification, "any alleged suggestiveness of the identification goes to the weight of the testimony rather than admissibility." *Id.* at 310-311. The trial court correctly stated this standard in response to Appellant's objections.

{¶18} The trial court did not err in overruling Appellant's objections to Mr. VanSchoyck's testimony describing how he came up with Appellant's name. The first assignment of error is overruled.

{¶19} Appellant's second assignment of error states that the adjudication was against the manifest weight of the evidence. Although not listed as an assignment of error, he also includes a sufficiency of the evidence argument.

{¶20} When determining whether a trial court's delinquency adjudication is against the manifest weight of the evidence, this Court employs the same standard of review applicable to criminal convictions claimed to be against the manifest weight of the evidence. *In re Williams*, 3d Dist. No. 9-10-64, 2011-Ohio-4338, ¶ 27. A challenge to a conviction based on the manifest weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief.*" (Emphasis sic.) *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52.

{¶21} Only if we conclude that the trier of fact clearly lost its way in resolving conflicts in evidence and created a manifest miscarriage of justice will we reverse the conviction and order a new trial. *Id.* Although the appellate court acts as a "thirteenth juror" in reviewing all of the evidence, it still must give due deference to the findings made by the fact-finder. *State v. Thompson*, 127 Ohio App.3d 511, 529 (8th Dist.1998).

{¶22} When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence submitted at trial, if believed, could reasonably support a finding of guilt beyond a reasonable doubt. *See State v. Thompkins*, 78 Ohio St.3d at 386 (stating, "sufficiency is the test of adequacy"); *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *Jenks, supra*; *Jackson v. Virginia*, 443 U.S. 307 (1979). This test raises a question of law and does not allow the court to weigh the evidence. *State v. Martin*, 20 Ohio App.3d 172, 175 (1st. Dist.1983).

{¶23} Pursuant to Juvenile Rule 29(E)(4) and R.C. 2151.35(A), a trial court may find a juvenile delinquent when the evidence demonstrates beyond a reasonable doubt that the child committed an act which would have constituted a

crime if committed by an adult. Therefore, the State was required to prove that Appellant was guilty of aggravated robbery with a firearm specification. R.C. 2911.01(A)(1) provides that:

> **(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:**
>
> **(1) Have a deadly weapon on or about the offender's person or under the offenders control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;**

**{¶24}** An additional penalty for a firearm specification is set forth in R.C. 2941.145(A), where "the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense." This statute is made applicable to juvenile proceedings pursuant to R.C. 2941.145(C), which states that "[t]he specification described in division (A) of this section may be used in a delinquent child proceeding in the manner and for the purpose described in section 2152.17 of the Revised Code."

**{¶25}** After a thorough review of the record, we find that there was sufficient evidence to support the trial court's findings, and that the decision was not against the weight of the evidence. The trial court was very careful to consider only the evidence that met the requisite standard of proof. Because the trial court

was not convinced beyond a reasonable doubt that Appellant was the person who threw the gun away by the air conditioner, and because there was no physical evidence that would prove it was the same gun used in the robbery, the trial court gave no consideration to the evidence presented surrounding the acquisition of the firearm, or the firearm itself.

{¶26} However, even without considering the evidence concerning the found weapon, the testimony of Mr. VanSchoyck provided all of the evidence necessary for a finding of delinquency. The trial court explained its findings, and discussed the evidence in the record in support of its findings as follows:

> The Court is not satisfied by the requisite standard of proof that this is the same weapon that was observed and described by the witness, Mr. VanSchoyck. The Court further is not satisfied by the requisite standard that the alleged delinquent child was the person who was observed in possession of that gun and observed to throw it behind the air conditioner. Rather, the Court concludes that the case ultimately must rise or fall on the testimony of the victim, Mr. VanSchoyck.
>
> The Court first will relate its finding that it is convinced beyond a reasonable doubt that [Appellant] on October 23rd, 2011, committed the offense of Robbery, in which Mr. VanSchoyck was the victim. The identification was strong from his testimony and the Court is satisfied again, beyond a reasonable doubt, that [Appellant] approached Mr. VanSchoyck with what he observed to be a drawn firearm, pointed it at the victim and demanded that he give him, "everything you have." The victim complied. Every element of the offense of Robbery has therefore been met.

(Dispositional Hrg. Tr., Apr. 27, 2012, p. 3)

{¶27} Because the trial court did not consider the evidence of the firearm that was found, the testimony of the BCI&I expert as to its operability was also disregarded. But, even without forensic evidence, the trial court found that the testimony by Mr. VanSchoyck concerning the gun that was pointed at him that evening was sufficient under the law to establish that the firearm was operable, relying upon R.C. 2923.11(B)(2) and the Ohio Supreme Court's decision in *State v. Tompkins*, 78 Ohio St.3d 380. R.C. 2923.11(B)(2) provides that "[w]hen determining whether a firearm is capable of expelling or propelling one or more projectiles by an action of an explosive or combustible propellant, the trier of fact may rely on circumstantial evidence, including but not limited to, representations and actions of the individual exercising control over the firearm."

{¶28} In *State v. Tompkins*, the firearm used during the hold-up was never recovered but the Ohio Supreme Court found that, based on the totality of the circumstances, the defendant's actions, even without an *explicit* threat, were sufficient to prove that he was in possession an operable firearm. 78 Ohio St.3d at 383. The Ohio Supreme Court held that "[a] firearm enhancement specification can be proven beyond a reasonable doubt by circumstantial evidence. In determining whether an individual was in possession of a firearm and whether the firearm was operable or capable of being readily rendered operable at the time of the offense, the trier of fact may consider all relevant facts and circumstances

surrounding the crime, which include any implicit threat made by the individual in control of the firearm." *Id.* at paragraph one of the syllabus.

{¶29} Again, Mr. VanSchoyck's testimony concerning Appellant's use of the weapon during the robbery provided proof beyond a reasonable doubt that he was brandishing an operable firearm, sufficient to sustain a conviction for aggravated robbery with a firearm specification. Appellant's arguments concerning minor inconsistencies in the testimony or the evidence concern insignificant collateral matters that were not germane to the elements of the offense. There was no evidence in the record that would cause the trial court to question the motivation or the veracity of Mr. VanSchoyck's testimony. We find no indication that the trier of fact lost its way or that the decision was a manifest miscarriage of justice. Appellant's second assignment of error is overruled.

{¶30} Having found no error prejudicial to the Appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**PRESTON, P.J. and ROGERS, J., concur.**

**/jlr**