OPINION
On September 27, 1999, a black male entered a Wendy's restaurant located near the campus of The Ohio State University, approached the counter, and ostensibly placed an order. However, when the cashier opened her register, the man reached for the cash drawer in an attempt to remove it from the register. After a brief struggle, the cashier backed away and the perpetrator wrested the cash drawer from the register and ran out of the building. The police were summoned, and the employees were interviewed. The cash drawer was recovered not far from the restaurant.
Almost three weeks later, the same black male entered the restaurant and approached Latasha Freeman, the cashier on duty. Instead of placing an order, he handed her a note which read, "This is a hold up. I have a gun." He then reached across the counter and attempted to grab money out of Ms. Freeman's hand as she made an attempt to deposit that money into her register. However, after a brief scuffle, Freeman punched the man in the face knocking him back on his heels. Startled, he swore at her as he fled the premises penniless. The police were again called, and during the course of their investigation interviewed Freeman and others who witnessed the attempted robbery.
Two days later, defendant, John D. Malone, entered the same Wendy's restaurant and took a seat in the dining room. Upon sight, Freeman and others recognized defendant as the man who had committed the previous robberies. The police were called, and as they pulled into the parking lot, defendant left the dining room and crossed the street. Armed with a description, the police located defendant and returned him to the restaurant where he was identified. Defendant was then arrested and charged with robbery, aggravated robbery, and intimidation of a crime victim.
The charge of intimidation of a crime victim was dismissed prior to trial. Trial commenced, and at the close of the state's case, the trial court dismissed the charge of aggravated robbery. Following closing argument, defendant was found guilty of robbery in violation of R.C.2911.02(A)(2) and (A)(3). Both convictions were allied with the second robbery only. The court merged these counts and sentenced defendant to two years' imprisonment. Defendant now appeals setting forth five assignments of error as follows:
 [1.] THE TRIAL COURT ABUSES ITS DISCRETION AND CAUSES IRREPARABLE MISIDENTIFICATION WHEN IT DIRECTLY COMMUNICATES TO EYEWITNESSES THAT THEY MUST TESTIFY BECAUSE THE DEFENDANT, WHOM THE COURT THEN IDENTIFIES AND REVEALS, WANTS A TRIAL.
 [2.] A TRIAL COURT ABUSES ITS DISCRETION AND CAUSES IRREPARABLE MISIDENTIFICATION WHEN IT ALLOWS THE PROSECUTION TO PRESENT TO AN EYEWITNESS A SEGREGATED MUGSHOT PURPORTEDLY OF THE DEFENDANT FOR IN-COURT IDENTIFICATION PURPOSES, SUBSEQUENT TO THAT WITNESS' INABILITY TO MAKE AN IN-COURT IDENTIFICATION OF THE DEFENDANT.
 [3.] A DEFENDANT DOES NOT RECEIVE A FAIR TRIAL WHERE THE PROSECUTION KNOWINGLY MAKES INCRIMINATING REPRESENTATIONS DURING OPENING STATEMENT THAT ADMITTEDLY CANNOT BE PROVEN AT TRIAL.
 [4.] IT IS PLAIN ERROR WHEN A BLACK, CRIMINAL DEFENDANT FACES AN ALL WHITE JURY AND IS NOT TRIED BY A JURY OF HIS PEERS.
 [5.] IT IS PLAIN ERROR WHEN A TRIAL COURT DOES NOT DISCHARGE ALTERNATE JURORS WHO HAVE NOT REPLACED REGULAR JURORS, AND THEN DIRECTS THE ALTERNATE JURORS TO SIT IN AND LISTEN TO JURY DELIBERATIONS.
In his first assignment of error, defendant contends the trial court "tipped off" two eyewitnesses in a manner which influenced their identification of defendant as the perpetrator of the second robbery. These two witnesses, Latasha Freeman and Gerald Thomas, noticed defendant enter Wendy's on October 20, 1999, the date of the second robbery, and recognized him as the man who had robbed the store only two days earlier.
Apparently, Freeman and Thomas were reluctant to appear in court, stating that they were feeling ill. Having been informed that they would be arrested if they did not appear, the court addressed them, out of the presence of the jury, explaining:
 Very briefly, folks, I want to apologize for dragging you down here on a day like today, and I understand you're not feeling well, but you need to understand this man has been in jail for a number of months now waiting for his trial, and we started the trial on Tuesday and I have got 14 jurors that have been sitting around for two days. So like I say, I apologize for dragging you down here, but I really didn't have much of a choice as far as I could see. * * * [Tr. 186-187.]
In light of the trial court's commentary, defendant frames the issue presented on appeal as follows:
 With [his] identity in dispute, the Court summons two key eyewitnesses into the courtroom where [defendant] is present with counsel. On the record, these two eyewitnesses receive an apology from the Judge for having to appear to testify against a man proclaiming his innocence. The Judge then tells the eyewitnesses, prior to their testimony and in the presence of [defendant], that [defendant] has been in jail for several months and he wants a trial. [Defendant's] identity no doubt is revealed to these two witnesses.
 * * * Clearly, the Court caused irreparable misidentification when it prejudicially disclosed the identity of [the defendant]. * * * [Defendant's brief at 4-5.]
Because defendant did not object at trial, and in fact specificallyrefused the trial court's offer of a curative instruction, defendant has waived all but plain error. Plain error must be so obvious, so palpable and fundamental, that it should have been apparent to the trial court without objection. State v. Tichon (1995), 102 Ohio App.3d 758, 767. Additionally, the error must prejudicially impact the defendant, and the defendant must prove that the outcome of his trial would have been different but for the alleged error. State v. Waddell (1996),75 Ohio St.3d 163, 166. As a result, plain error is generally recognized only under exceptional circumstances, and only in those instances where it is necessary to prevent a manifest miscarriage of justice. State v.Phillips (1995), 74 Ohio St.3d 72, 83; State v. Ospina (1992),81 Ohio App.3d 644, 647.
In this case, the trial court's explanation, or admonition to Thomas and Freeman, was not so plainly in error, or so prejudicial, that it resulted in defendant's conviction where there otherwise would have been none. Other than innuendo, there is no indication that these witnesses identified defendant as the perpetrator as a result of the trial court's comments. Both witnesses were sworn and were asked whether or not they could identify defendant based upon what they observed during the two robberies. Both were thoroughly questioned and cross-examined concerning their own recollection of the robberies and testified accordingly.
In response to questions about the first robbery, Freeman testified that she "got a good look of him," that she "was right near him," and that she "saw everything." (Tr. 241-243.) At the time of the second robbery, Freeman was working the cash register when she was accosted by defendant. She again testified that she "saw everything, his whole description." (Tr. 252.) She also testified that she doesn't "forget a face," adding, "I might forget your name, but I don't forget a face." (Tr. 253.) When asked about defendant's presence in the restaurant on October 20, 1999, Freeman again stated that she was positive that defendant was the individual who committed the robbery.
The record reveals that defense counsel conducted a thorough and effective cross-examination of Freeman concerning her identification of defendant. Among other matters, defense counsel questioned Freeman to determine whether or not her identification was influenced by conversations with other witnesses, or whether anyone instructed her to include or exclude facts in her written statements. Counsel also carefully illustrated for the jury's consideration the differences between Freeman's in-court and out-of-court descriptions of defendant.
Thomas also testified that he was able to identify defendant from his own personal observations and gave a detailed description of the events he witnessed. When asked whether or not he saw the perpetrator's face well enough on October 18 to make an identification, Thomas stated, "I could identify him." When questioned about the October 20 incident, Thomas again stated that he was certain of his identification of the defendant as the individual responsible for that robbery.
Defendant's conclusory arguments to the contrary, defendant falls far short of establishing that the result of his trial would have been different had the trial court not addressed Freeman and Thomas regarding why it was necessary for them to appear and testify in court. Accordingly, defendant's first assignment of error is not well-taken.
In his second assignment of error, defendant suggests the trial court erred when it allowed the prosecutor to show Betty Fooce, an eyewitness, a photograph of defendant after she was unable to make an in-court identification. Defendant contends that this was unreliable, and "patently unfair."
In a sidebar conference, the court noted that defendant's appearance had changed drastically from the time of his arrest to the time of trial. When he was arrested, defendant had long hair and a full beard and mustache, while at trial, defendant's head was shaved and he had little or no facial hair. This change in appearance was not disputed. Therefore, the court allowed the prosecutor to show Ms. Fooce defendant's "mugshot," and to ask her certain questions about the individual depicted in that photograph. However, defendant is incorrect in asserting that Fooce was asked to attempt another in-court identification after viewing the photograph. She was not. Because Ms. Fooce did not identify defendant in court, either before or after being shown defendant's photograph, we are unable to conclude that defendant was prejudiced by the allegedly suggestive identification.
Moreover, assuming Ms. Fooce had made an in-court identification, in order to suppress that identification there must be a very substantial likelihood of irreparable misidentification. State v. Jells (1990),53 Ohio St.3d 22, 27, citing Simmons v. United States (1968), 390 U.S. 377,384, 88 S.Ct. 967, 971. In Neil v. Biggers (1972), 409 U.S. 188,93 S.Ct. 375, the United States Supreme Court explained that the court must determine, "under the `totality of the circumstances' [whether] the identification was reliable even though the confrontation procedure wassuggestive." Id. at 199-200 (emphasis added). The Ohio Supreme Court has also held that although an identification procedure may have contained "notable flaws," this fact alone does not preclude the admissibility of the subsequent in-court identification. State v. Moody (1978),55 Ohio St.2d 64. The Supreme Court continued noting that reliability is the linchpin in determining the admissibility of identification testimony, and the factors affecting reliability include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Id. at 67.
In this case, Ms. Fooce identified defendant immediately after his arrest on October 20, 1999. However, it is undisputed that at that time defendant's appearance was markedly different from his appearance at trial. As might be expected, at trial, approximately four months later, Ms. Fooce had some difficulty making an identification. However, having reviewed the trial transcript, we are unable to conclude that this identification procedure, had it resulted in an actual identification, was fatally flawed. Accordingly, defendant's second assignment of error is not well-taken.
In his third assignment of error, defendant puts forth a claim of prosecutorial misconduct. Defendant takes issue with a portion of opening argument at which time the prosecutor explained what happened during the first robbery. Defendant argues:
 During the opening statement phase of [defendant's] trial, the prosecutor mentions a witness named Rena Woods who is apparently the [first] robbery victim. Ms. Woods, according to the prosecutor, struggled with [defendant] and in the struggle, she sees [defendant] with something that purports to be a handgun. Later in the opening statement, the prosecutor says that he believes Ms. Woods will not testify in this case. This is the only mention by a witness of the defendant having a gun.
 Immediately after the prosecutor's opening statement, defense counsel [for the defendant] moves for a mistrial. * * * The Judge overrules the motion. [Defendant's brief at 8.]
The test used to determine the existence of prosecutorial misconduct is whether the challenged conduct or comments of counsel are improper and, if so, whether they prejudicially affect substantial rights of the defendant. State v. Smith (1984), 14 Ohio St.3d 13, 14. "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." Smithv. Phillips (1982), 455 U.S. 209, 219, 102 S.Ct. 940, 947. As such, misconduct is not grounds for reversal unless it is shown that the defendant has been denied a fair trial. State v. Maurer (1984),15 Ohio St.3d 239, 266.
Trial counsel is permitted considerable latitude in presenting opening and closing argument, and the question of whether counsel has exceeded appropriate bounds is left to the sound discretion of the trial court.Id. at 269, quoting State v. Pustare (1973), 33 Ohio App.2d 305, 312. Error exists if it is clear beyond a reasonable doubt that the jury would not have found the defendant guilty absent the prosecutor's conduct.State v. Smith (1984), 14 Ohio St.3d 13, 15.
A careful review of the transcript reveals that the prosecutor's opening statement did not deny defendant a fair trial. Both the trial court and the prosecutor explained to the jury that opening and closing argument was not evidence, that counsel could inadvertently misstate a fact, and that the jury should listen to the witnesses and rely upon their own recollection of the evidence and testimony presented. The jury was also instructed as to the presumption of innocence and the burden of proof imposed upon the state. Additionally, the prosecutor's remarks were isolated and did not pervade the remainder of the state's opening, trial, or closing. And finally, the trial court dismissed the charges of aggravated robbery which related to the first robbery involving Rena Woods.
The decision to grant or deny a mistrial is a matter within the discretion of the trial court, State v. Garner (1995), 74 Ohio St.3d 49; and State v. Glover (1988), 35 Ohio St.3d 18, and is generally only granted when a fair trial is no longer possible. State v. Franklin
(1991), 62 Ohio St.3d 118. In this instance, when viewed in the context of the entire proceeding, the prosecutor's opening statement does not compel us to reverse defendant's conviction on prosecutorial misconduct grounds. Accordingly, defendant's third assignment of error is not well-taken.
In his fourth assignment of error, defendant claims that it should be against the law to try an individual before a jury which does not include members of the defendant's race and ethnicity. In other words, defendant contends that a jury of one's peers must include jurors who have the same color skin as the defendant, and presumably jurors who are of the same ethnic and/or religious heritage.
While any systematic exclusion in the jury selection process clearly violates a defendant's Sixth Amendment rights, Taylor v. Louisiana
(1975), 419 U.S. 522, 95 S.Ct. 692, no such claim has been made in this instance. Therefore, because there is no requirement that petit juries in every instance reflect the many distinct groups in the population as a whole, defendant's fourth assignment of error is not well-taken. SeeState v. Lundgren (1995), 73 Ohio St.3d 474, 480.
In his fifth and final assignment of error, defendant argues the trial court committed plain error when it allowed alternate jurors to observe jury deliberation. This court addressed this precise issue in State v.Morrisson (Aug. 5, 1993), Franklin App. No. 93AP-197, unreported. Therein we explained:
 Appellant argues that the presence of the alternates in the jury room during deliberations is inherently prejudicial. Appellant's counsel did not object to the alternates' presence during deliberations nor to their viewing the exhibits. Therefore, appellant must demonstrate that plain error occurred in order to warrant reversal.
 The United States Supreme Court recently addressed this issue in United States v. Olano (1993), 507 U.S. 725, 113 S.Ct. 1770. The court noted that the presence of alternate jurors during jury deliberations is a deviation from the Federal Rules of Criminal Procedure; however, the court focused its attention on whether the error affected substantial rights of the defendant. The court concluded that the presence of alternate jurors during jury deliberations is not the kind of error that affects substantial rights independent of its prejudicial impact. As in the present case, the Supreme Court noted that there had been no showing that the alternate jurors either participated in the jury's deliberations or "chilled" deliberation by the regular jurors.
As in Morrison, defendant did not object to allowing the alternate jurors to observe deliberation. Defendant also offers no evidence whatsoever to suggest that the alternate jurors disobeyed the trial court's instructions, participated in deliberation, or "chilled" deliberation by their presence. Accordingly, defendant's fifth assignment of error is also not well-taken.
Having overruled all five of defendant's assignments of error, we hereby affirm the judgment of the Franklin County Court of Common Pleas.
 __________________ PETREE, J.
BRYANT, P.J., and TYACK, J., concur.