OPINION
{¶ 1} Montrey Antwan Smith is appealing from his conviction, after a jury trial, of the offenses of robbery (use of force), aggravated robbery (deadly weapon), three-year firearms specification, felonious assault (deadly weapon), three-year firearms specification, and possession of cocaine, and was duly sentenced to various terms which amounted to consecutively and concurrently for a total of eight years.
 {¶ 2} Defendant brings the following four assignments of error on appeal:
FIRST ASSIGNMENT OF ERROR
 {¶ 3} "APPELLANT'S CONVICTION AND SENTENCING IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
SECOND ASSIGNMENT OF ERROR
 {¶ 4} "THE COURT ERRED AS A MATTER OF LAW BY ALLOWING THE PROSECUTION TO AMEND COUNT THREE OF THE INDICTMENT TO INCLUDE A GUN SPECIFICATION AS CHANGING THE NATURE AND/OR IDENTITY OF THE CRIME CHARGED UNDER CRIMINAL RULE 7(D)."
THIRD ASSIGNMENT OF ERROR
 {¶ 5} "THE COURT ERRED AS A MATTER OF LAW IN ADMITTING EVIDENCE AND TESTIMONY OF IDENTIFICATION REGARDING A PREJUDICIAL AND SUGGESTIVE PHOTO SPREAD WHEN THE PHOTO SPREAD WAS NEVER RE-ARRANGED BETWEEN WITNESSES IN WHICH LAW ENFORCEMENT AND THE PROSECUTION KNEW WORKED TOGETHER AT THE SAME RESTAURANT AND WERE LIKELY TO DISCUSS THE CASE BETWEEN THEMSELVES."
FOURTH ASSIGNMENT OF ERROR
 {¶ 6} "THE COURT ERRED AS A MATTER OF LAW WHEN IT CHANGED ITS DECISION ON THE MOTION TO SUPPRESS FROM GRANTED TO OVERRULED DUE TO SAID MATTER NOT INVOLVING A CLERICAL MISTAKE AS REQUIRED BY CRIMINAL RULE 36."
 {¶ 7} As to the first assignment of error, when a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resulting conflicts in the evidence, a trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997),78 Ohio St.3d 380, 387, citing State v. Martin (1983),20 Ohio App.3d 172, 175. Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit testimony of particular witnesses," we must afford substantial deference to its determinations for credibility. State v. Lawson (August 22, 1997), Montgomery App. No. 16288, unreported. A judgment should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. Martin, supra, at 175.
 {¶ 8} In this appeal the Defendant, represented by counsel, argues essentially that the conviction is against the manifest weight of the evidence because the identification of the Defendant was unreliable because, as he argues, the photospread was too suggestive to the witnesses that the Defendant was the perpetrator. We find this argument to be wholly groundless.
 {¶ 9} The key witness here, one Hubert Murphy, who is the maintenance employee of Benjamin's Burger Master restaurant, had finished his work and was seated at one of the tables when a black male, later known as the Defendant, sat down across from Mr. Murphy and spoke with him about getting a jump start for his car. Shortly thereafter the manager of the restaurant, Betty Pritchard, came out from the back of the restaurant and announced that she was going to the bank as was customary to make a deposit. Mr. Murphy followed her out to the parking lot and quickly became aware that the Defendant had followed them outside and Murphy told the Defendant, my car is over there, but when they got to Ms. Pritchard's truck, Mr. Murphy went on the passenger side to check the exhaust system for damage, as Ms. Pritchard had requested, and in the meantime Ms. Pritchard opened the driver's side door, placed her purse and bank bag with the deposit on the seat and began to climb in the truck whereupon she was suddenly pushed down in the seat and saw the Defendant grab the bank bag and take off running. She screamed to Mr. Murphy, "Get him, . . . he's got the money." Whereupon Murphy jumped out from under the truck and watched Defendant run to the alley behind the restaurant and he then chased the Defendant on foot until they got to a street when the Defendant turned and said "Stop, Murphy. I've got a gun." He then pulled out his gun and aimed it at Mr. Murphy and fired and Murphy felt the bullet fly by his head, after which Murphy returned to Benjamin's where one employee had already called the police.
 {¶ 10} Another employee of Benjamin's, William Anderson, walked towards the scene in question in search of the Defendant and observed a man wearing a blue "jumpsuit" with his hands in a trash can. Anderson watched the man for five minutes and after the man left he looked inside the trash can and located a Benjamin's Burger Master bank bag and a gun, all of which he brought back to Benjamin's and turned over to police.
 {¶ 11} In the meantime, Murphy, who had not given up on finding Defendant, went into his own car and found Defendant on Great Miami Boulevard and ran him down in Defendant's vehicle, but Defendant still managed to get away. He saw Defendant go into a restaurant a couple of blocks away and told police what had happened. Eventually, a detective found the Defendant, who had injuries to his face and legs which the Detective believed may have been caused when Murphy's car collided with Defendant on Great Miami Boulevard. The photospreads identifying the Defendant were examined by employees who had all seen the Defendant personally at Benjamin's restaurant that day and Murphy himself said there were "no doubts in my mind" that the picture identified as number six was the man who shot at him.
 {¶ 12} The argument that Defendant makes under the first assignment of error that the identification made of him by various witnesses was unreliable is on its face rather extraordinary. These witnesses all saw Defendant personally, up close, and over a not limited period of time. In fact, Murphy saw the Defendant raise a gun and point it at him and we can well imagine that one is very well focused when a gun is being pointed at one, and Murphy had no question that Defendant was the man who was responsible for the robbery and felonious assault with a deadly weapon.
 {¶ 13} Another employee at the restaurant, a Carrie Johnson, testified that she was three feet away from the Defendant when he was at that restaurant on that morning and was able to observe the Defendant for ten minutes while he was inside the restaurant and gave police a full description of Defendant and told them she could identify him, which she did after the incident from the photospread.
 {¶ 14} Defendant also argues in this assignment of error that Mr. Murphy did not identify the Defendant in his first look through of the photographs and only did so on the second look at photographs. However, Murphy's first identification attempt was of four hundred photos, which did not include Defendant's, on March 11 and he did not identify Defendant from those photos. But, on March 13 he was shown a photospread containing a picture of Defendant and he identified Defendant immediately. It is quite evident from the record that the identification of the Defendant as the perpetrator was solid and convincing by all the employees involved at the restaurant and we therefore find that the Defendant's first assignment of error is not only without merit, but indeed, is feckless. It is therefore overruled.
 {¶ 15} In his second assignment of error Defendant argues that the prosecution should not have been allowed to amend count three of the indictment to include a gun specification because it therefore changed the nature and/or identity of the crime charged. It is quite clear, however, from the record, that the change was merely to correct a clerical error which had been made in the specification to count four, which outlined the firearm violation, which clearly referred to count three and only the headline over the count referred to count four. This is a clear typographical error and was properly corrected by the trial court.
 {¶ 16} Defendant's third assignment of error again refers to the identification issue and suggests that the photospread was too suggestive. We have discussed this already under the first assignment of error and find that there is no merit to this assignment at all.
 {¶ 17} In his fourth assignment of error, Defendant argues that the trial court committed error when it changed its decision on the motion to suppress from granting the motion to overruling it. It is quite clear from the record that the trial court found that the challenged identification was reliable and not unnecessarily suggestive and, citing Neil v. Biggers,409 U.S. 188 and the Supreme Court opinion in State v. Moody (1978),55 Ohio St.2d 64, that there was no showing of any due process violation and identifications "are admitted." The court then went on to say the motions to suppress are granted. Whereupon the prosecuting attorney said, "Do you mean overruled, Your Honor?" and the court responded, "picky, picky. Yes, are overruled." At that point, the Defendant's counsel said, "I don't have any problem with that Your Honor." It is quite clear from that exchange not only that the Defendant waived any possible error on the issue but that the court was merely correcting a misstatement on its part at the end of its decision and properly overruled the motion to suppress. The fourth assignment of error is therefore overruled.
 {¶ 18} Having overruled all assignments of error and finding that there was no miscarriage of justice in the case before us, the judgment is Affirmed.
Brogan, P.J. and Fain, J., concur.
Hon. Frederick N. Young, Retired from the Court of Appeals, Second District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.