OPINION
{¶ 1} This matter is submitted to this court on the record and the briefs of the parties. Appellant, Donte J. Butcher, appeals the judgment entered by the Portage County Court of Common Pleas. Butcher was sentenced to a six-year prison term for his conviction for felonious assault, with a firearm specification.
 {¶ 2} On the evening of February 17, 2006, Justin Ramsey went out drinking with one of his friends. He returned to his residence in Kent, Ohio about 2:30 a.m. He decided to visit his neighbor, Zachary Borchers. Upon entering Borchers' residence, *Page 2 
Ramsey noticed several people inside. He also noticed two handguns on the coffee table. One of the guns was a revolver, and the other gun was described as an "automatic," in that it operated with a clip.[1] There were three African-American males sitting near the guns. The males were identified as Butcher, David Jackson, and one of their friends.
 {¶ 3} Prior to Ramsey arriving, Borchers, Ashley Steiner, and two other girls were at Borchers' residence. One of the girls called Butcher and invited him to Borchers' residence. Thereafter, Butcher, Jackson, and their friend arrived at Borchers' residence.
 {¶ 4} Upon his arrival, Ramsey made several statements about his dislike for guns. He picked up the semiautomatic handgun and unloaded it. At that time, he began to argue with Butcher, Jackson, and their friend about the presence of the guns in Borchers' residence. A fist fight soon broke out between Ramsey and Butcher, Jackson, and their friend. Ramsey was able to escape Borchers' residence and returned home. Borchers was upstairs when the fight occurred in his apartment. As a result of the fight, he told everyone to leave his residence.
 {¶ 5} After entering his home, Ramsey went back outside and continued to argue with Butcher, Jackson, and their friend. The group got into their car to leave, with Jackson driving, Butcher riding in the front passenger seat, and their friend in the backseat. Then, gunshots were fired at Ramsey, with two bullets hitting him in the leg. Borchers testified that Jackson and Butcher were both shooting their guns. *Page 3 
 {¶ 6} Butcher was initially charged with attempted murder in juvenile court. However, following a hearing, he was bound over to common pleas court. Butcher was indicted on one count of felonious assault, in violation of RC. 2903.11(A)(2) and a second-degree felony, and one count of participation in a criminal gang, in violation of R.C. 2923.42(A) and a second-degree felony. The participation in a criminal gang count was subsequently dismissed by the trial court.
 {¶ 7} The trial court issued a material witness warrant for Borchers. This was due to the state's assertion that Borchers failed to appear for Jackson's trial, despite being subpoenaed. Borchers was held for a total of 52 days on this warrant and charges of obstructing justice for not testifying in Jackson's case. The obstructing justice charges were later dismissed.
 {¶ 8} Butcher waived his right to a jury trial, and the matter proceeded to a bench trial. The state presented several witnesses, including Borchers and Steiner. Borchers and Steiner acknowledged giving prior false statements or testimony relating to the events of the night in question. Following the state's case-in-chief, Butcher moved for acquittal pursuant to Crim.R. 29. The trial court denied his motion.
 {¶ 9} The trial court found Butcher guilty of felonious assault. The trial court sentenced Butcher to a three-year prison term for his felonious assault conviction. In addition, Butcher received a three-year prison term on the firearm specification, which was to be served consecutively to the three-year term on the underlying offense. Thus, his aggregate prison term was six years.
 {¶ 10} Butcher raises the following assignment of error: *Page 4 
 {¶ 11} "The verdict finding the defendant guilty was against the manifest weight of the evidence; the evidence is not legally sufficient to support the verdict."
 {¶ 12} A trial court shall grant a motion for acquittal when there is insufficient evidence to sustain a conviction. Crim.R. 29(A). When determining whether there is sufficient evidence presented to sustain a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia
(1979), 443 U.S. 307.
 {¶ l3} Butcher was charged with felonious assault, in violation of R.C. 2903.11, which provides, in part:
 {¶ 14} "(A) No person shall knowingly do either of the following:
 {¶ 15} " * * *
 {¶ 16} "(2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."
 {¶ l7} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C.2901.22(B).
 {¶ 18} Initially, we note that Ramsey suffered two gunshot wounds to his leg. Thus, there was sufficient evidence that shots were fired at Ramsey and that Ramsey was physically harmed by a deadly weapon. See R.C. 2923.11(A) and (B)(1). The crux *Page 5 
of Butcher's argument is that there was insufficient evidence identifying him as a shooter.
 {¶ 19} We acknowledge that much of the evidence presented by the state was circumstantial. However, the Supreme Court of Ohio has held that "`circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof.'" State v. Biros (1997), 78 Ohio St.3d 426, 447, quoting State v. Jenks, 61 Ohio St.3d 259, paragraph one of the syllabus.
 {¶ 20} Butcher was at Borchers' residence on the night in question. Both Borchers and Steiner testified that he was there that evening.
 {¶ 21} Further, Borchers testified that he saw Butcher hanging out of the passenger window of the car shooting at Ramsey. He also stated that Jackson was the driver of the vehicle and he too was shooting at Ramsey. Steiner acknowledged making a prior statement that Butcher was in the passenger seat. This testimony is supported by the fact that Jackson's stepfather was the owner of the vehicle and stated that Jackson did not have permission to have the vehicle that night. This circumstantial evidence creates the inference that Jackson was driving his stepfather's car.
 {¶ 22} Borchers testified that Butcher possessed the semiautomatic handgun on the night in question. There was evidence that the semiautomatic handgun was fired. This is because shell casings were found in the street following the incident. Officer Samuel Todd of the Kent Police Department testified that a semiautomatic handgun ejects empty casings after each shot, while a revolver retains the empty casings until *Page 6 
they are manually removed. The fact that the semiautomatic handgun was fired is circumstantial evidence that Butcher shot at Ramsey.
 {¶ 23} We note the evidence at trial was unclear as to whether the bullets that struck Ramsey came from Butcher's gun or Jackson's gun. However, R.C. 2903.11(A)(2) only requires that Butcher attempted to cause physical harm to Ramsey. Thus, shooting at Ramsey, even if his particular shots did not strike Ramsey, is sufficient to violate the statute. See, e.g., State v. Hudson (Dec. 21, 1990), 11th Dist. No. 89-L-14-143, 1990 Ohio App. LEXIS 5679, at *3 and State v. Smith, 2d Dist. No. 20932, 2005-Ohio-7072, at ¶ 1, 9.
 {¶ 24} When viewed in a light most favorable to the state, there was sufficient evidence presented by the state that the trier-of-fact could conclude that Butcher caused or attempted to cause physical harm to Ramsey by means of a deadly weapon beyond a reasonable doubt.
 {¶ 25} In determining whether a verdict is against the manifest weight of the evidence, the Supreme Court of Ohio has adopted the following language as a guide:
 {¶ 26} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier-of-fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" State v. Thompkins (1997),78 Ohio St.3d 380, 387. *Page 7 
 {¶ 27} The weight to be given to the evidence and the credibility of witnesses are primarily matters for the trier-of-fact to decide.State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 28} The testimony of Borchers and Steiner was inconsistent with prior statements and/or testimony they had given regarding the details of the night in question. Borchers testified that he received a phone call two days after the incident asking him why he snitched. While he testified in the instant matter that he did not know who the caller was, he stated in a police statement that the caller was Butcher. Borchers acknowledged that he had spent 52 days in jail for failing to testify in another matter concerning this incident and being held as a material witness in this matter. Also, Borchers testified that he was untruthful in his initial statement because he was trying to protect himself and others.
 {¶ 29} Steiner testified that she had given a prior statement, which indicated that Butcher and another individual had called her, asked her why she snitched, and told her they would find her. At trial in this matter, Steiner testified that she did not remember anything about the events of the night in question because she was so drunk. The trial court declared her a hostile witness, and the state's direct examination consisted of questioning Steiner about her prior testimony and statements. In addition, there was evidence presented that Steiner was on probation on the night in question and was afraid of getting in trouble.
 {¶ 30} In regard to both Steiner and Borchers, they were at a party where underage drinking was taking place. Some of the people attending the party were on probation. In addition, Butcher and/or other individuals called the witnesses and *Page 8 
threatened them. These and other factors most certainly contributed to the witnesses' inconsistent testimony. It was up to the trial court, in its role as trier-of-fact, to assess the credibility of the witnesses during the trial. State v. DeHass, supra. The trial court specifically noted there was inconsistent testimony but attributed the inconsistencies to the witnesses' fear of retaliation or prosecution. In addition, the trial court noted the testimony regarding the crucial underlying events was substantially similar.
 {¶ 31} Butcher also argues the witnesses' testimony should not be believed because they were drinking alcohol on the night in question. Borchers testified that he had three or four beers on the night in question. Ramsey also admitted to drinking prior to the altercation. However, Ramsey's and Borchers' testimony was generally consistent with each other, as well as with the physical evidence presented. Steiner testified that she had "two bottles," but did not specify what was in the bottles. Further, there was evidence that Steiner was threatened regarding her testimony. At the instant trial, her general testimony was that she was so drunk she did not remember anything. However, in earlier statements and testimony, Steiner remembered several events in significant detail and denied that she had been drinking. The amount of alcohol consumed by the witnesses and its effect on their ability to accurately recall the details of the night in question were both issues for the trial court to resolve.
 {¶ 32} Butcher notes that Borchers did not see any muzzle flash from either of the guns that night. Officer Samuel Todd of the Kent Police Department testified that the majority of guns produce a muzzle flash when fired. The fact that Borchers did not see a muzzle flash, standing alone, does not render Borchers' testimony incredible. First, it is possible that the guns in the instant matter did not produce a large muzzle *Page 9 
flash. Moreover, with all of the events going on, including an argument, a fist fight, and gunshots, the fact that Borchers did not remember if there was a muzzle flash is not surprising. Further, it is obvious that guns were fired, since Ramsey was shot twice in the leg. Finally, there is specific evidence that the semiautomatic handgun was fired, because of the empty shell casings found in the street.
 {¶ 33} The trial court did not lose its way or create a manifest miscarriage of justice by finding Butcher guilty of felonious assault with a firearm specification.
 {¶ 34} Butcher's assignment of error is without merit.
 {¶ 35} The judgment of the trial court is affirmed.
CYNTHIA WESTCOTT RICE, P.J., COLLEEN MARY OTOOLE, J., concur.
[1] While the firearm was described by some witnesses as an "automatic," the testimony describing the handgun is more consistent with the definition of a semiautomatic. See R.C. 2923.11(D). For the purposes of this opinion, we will refer to the weapon as a semiautomatic. *Page 1