OPINION *Page 2 
{¶ 1} Defendant-appellant Robert Dante Mann appeals from his convictions and sentences in the Stark County Court of Common Pleas on one count of identity fraud, a felony of the fourth degree, in violation of R.C. 2913.49(B); on one count of theft, a felony of the fifth degree, in violation of R.C. 2913.02(A) (3); and one count of forgery, a felony of the fifth degree, in violation of R.C. 2913.31(A) (1). Plaintiff-appellee is the State of Ohio.
 STATEMENT OF FACTS AND THE CASE {¶ 2} On September 25, 2006, Michael E. Sheridan of Columbus, Ohio began receiving credit cards in the mail. Upon receiving a Sears credit card for which he had not applied he telephoned Citibank, who had issued the card, to inform them it was a fraudulent account. Upon further investigation, Mr. Sheridan discovered that approximately 15 accounts had been opened in his name and, further, that his credit report showed numerous credit inquiries. Mr. Sheridan called Credit First and was informed that someone had purchased four Michelin Tires and an oil change from the Ziegler Tire Store in Canton, Ohio on September 19, 2006 by forging his name to a credit application. The credit application contained his correct name, correct address, correct social security number and correct date of birth; however, the signature on the credit application was not Mr. Sheridan's.
 {¶ 3} Mr. Sheridan contacted the Westerville Police Department who referred the identity theft complaint to the City of Canton Police Department. Detective Deborah Wuertz was assigned to the case. *Page 3 
 {¶ 4} Brandon Villilo was the assistant manager at the Ziegler Tire Stores at the Canton Centre Mall on September 19, 2006. On that day, appellant entered the store and asked to open an account. Mr. Villilo gave him a credit account application and asked appellant for identification. Appellant gave him an Ohio Driver's License in the name of Michael E. Sheridan. Mr. Villilo filled in the top of the credit account application based on the information from the driver's license. Appellant also told Mr. Villilo he worked at Boles' Construction.
 {¶ 5} Mr. Villilo forwarded the application to Credit First where it was approved; Appellant then purchased four Michelin tires and a high-end synthetic oil change for the Cadillac he was driving for a total of $681.04. A purchase invoice and credit card were also generated. Appellant signed the name Michael Sheridan to the credit application and receipt.
 {¶ 6} Appellant then told Mr. Villilo that his cousin, Benny Anthony, was authorized to use the credit he had just obtained using the name Michael Sheridan to buy a set of wheels. Mr. Anthony came in a few days later and identified himself to Mr. Villilo as Sheridan's cousin. After calling a cell phone identified as belonging to appellant, the wheel purchase was approved by Mr. Villilo for an amount not to exceed $1,000.
 {¶ 7} Later that month, Mr. Villilo was visited by Sergeant Wuertz and asked to view a photographic line-up. Mr. Villilo was able to identify appellant's cousin, Bennie Anthony, as the wheel purchaser.
 {¶ 8} On January 31, 2007, Mr. Villilo was asked to view another photographic lineup compiled by Detective Wuertz to see if he recognized the man who applied for *Page 4 
credit in the name of Michael Sheridan and who received the tires and oil change for the Cadillac. Mr. Villilo remembered the man because he spent some 15 minutes with him and remembered his appearance and manner. Mr. Villilo identified appellant in the photographic line-up.
 {¶ 9} After hearing the evidence and receiving instructions from the trial court, the jury returned with a verdict of guilty to all charges in the indictment.
 {¶ 10} Appellant was sentenced to 17 months in prison on Identity Fraud, 11 months in prison on Theft and 11 months on Forgery for a total prison term of 28 months.
 {¶ 11} It is from this conviction, and sentence that appellant now appeals, assigning the following error for review:
 {¶ 12} "I. APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."
 I. {¶ 13} In his sole assignment of error, appellant maintains that his convictions are against the sufficiency of the evidence and against the manifest weight of the evidence. We disagree.
 {¶ 14} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, 678 N.E.2d 541, superseded by constitutional amendment on other grounds as stated by State v. Smith, 80 Ohio St.3d 89,1997-Ohio-355, 684 N.E.2d 668. "While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest *Page 5 
weight challenges questions whether the State has met its burden of persuasion." State v. Thompkins, supra at 78 Ohio St.3d 390.
 {¶ 15} In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v.Jenks (1991), 61 Ohio St. 3d 259, superseded by State constitutional amendment on other grounds as stated in State v. Smith (1997),80 Ohio St. 3d 89.
 {¶ 16} Specifically, an appellate court's function, when reviewing the sufficiency of the evidence to support a criminal conviction, is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks, supra. This test raises a question of law and does not allow the court to weigh the evidence. State v. Martin (1983), 20 Ohio App.3d 172, 175. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."State v. Thompkins, 78 Ohio St. 3d at 386.
 {¶ 17} The Ohio Supreme Court recently addressed the standard of review for a criminal manifest weight challenge, as follows:
 {¶ 18} "The criminal manifest-weight-of-the-evidence standard was explained in State v. Thompkins (1997), 78 Ohio St.3d 380,678 N.E.2d 541. In Thompkins, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. Id. at 386,678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to *Page 6 
whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. Id. at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. Id. at 387, 678 N.E.2d 541. `When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the fact finder's resolution of the conflicting testimony.' Id. at 387,678 N.E.2d 541, citing Tibbs v. Florida (1982), 457 U.S. 31, 42,102 S.Ct. 2211, 72 L.Ed.2d 652.
 {¶ 19} "Both C.E. Morris Co., 54 Ohio St. 2d 279, 8 O.O.3d 261,376 N.E.2d 578, and Thompkins instruct that the fact-finder should be afforded great deference. However, the standard in C.E. Morris Co. tends to merge the concepts of weight and sufficiency. See State v. Maple
(Apr. 2, 2002), 4th Dist. No. 01CA2605, 2002 WL 507530, fn. 1; State v.Morrison (Sept. 20, 2001), 10th Dist. No. 01AP-66, 2001 WL 1098086. Thus, a judgment supported by "some competent, credible evidence going to all the essential elements of the case" must be affirmed. C.E. MorrisCo. Conversely, under Thompkins, even though there may be sufficient evidence to support a conviction, a reviewing court can still re-weigh the evidence and reverse a lower court's holdings. State v.Thompkins, 78 Ohio St.3d 380, 678 N.E.2d 541. Thus, the civil-manifest-weight-of-the-evidence standard affords the lower court more deference then does the criminal standard. See Barkley v.Barkley (1997), 119 Ohio App.3d 155, 159, *Page 7 694 N.E.2d 989." State v. Wilson, 713 Ohio St.3d 382, 387-88, 2007-Ohio-2202
at ¶ 25-26; 865 N.E.2d 1264, 1269-1270.
 {¶ 20} However, an appellate court may not merely substitute its view for that of the jury, but must find that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, supra,78 Ohio St. 3d at 387. (Quoting State v. Martin (1983),20 Ohio App. 3d 172, 175, 485 N.E.2d 717, 720-721). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.
 {¶ 21} In State v. Thompkins supra, the Ohio Supreme Court held "[t]o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." Id. at paragraph three of the syllabus. However, to "reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Id. at paragraph four of the syllabus; State v. Miller (2002), 96 Ohio St.3d 384,2002-Ohio-4931 at ¶ 38, 775 N.E.2d 498.
 {¶ 22} There is no dispute in the case at bar that identity fraud, theft and forgery as alleged in the indictment had in fact occurred. Appellant's main argument is that there was insufficient evidence to identify him as the perpetrator of those crimes.
 {¶ 23} The Supreme Court of Ohio, in State v. Moody (1978),55 Ohio St.2d 64, 67, quoting Manson v. Brathwaite (1977), 432 U.S. 98, stated that reliability is the *Page 8 
"linchpin" in determining the admissibility of identification testimony. Factors that affect reliability and, therefore, admissibility, include:
 {¶ 24} "* * * `* * * [T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.' Neil v.Biggers (1972), 409 U.S. 188, 199. * * *"
 {¶ 25} In the case at bar, appellant has not, however, argued that the identification procedure used here was in any way suggestive. In the case at bar, Mr. Villilo, the assistant manager of the Ziegler Tire Store in the Canton Centre Mall identified appellant as the person who appeared in the store on September 19, 2006, identified himself as Michael Sheridan, signed the name of Sheridan to a credit application and, as a result, obtained tires and an oil change totaling almost $700. Mr. Villilo identified both appellant and Benny Anthony in a photographic line up and further identified appellant in court during his trial. Mr. Villilo testified that he remembered appellant because he spent about 15 minutes with him and observed his dress. Mr. Sheridan testified that the credit application appellant signed with his name was forged.
 {¶ 26} Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that identity fraud, theft and forgery occurred. Viewing this evidence linking appellant to these offenses in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crimes of identity fraud, theft and forgery. We hold, therefore, that the *Page 9 
state met its burden of production regarding each element of the crimes and, accordingly, there was sufficient evidence to support appellant's conviction.
 {¶ 27} "A fundamental premise of our criminal trial system is that `the jury is the lie detector.' United States v. Barnard, 490 F.2d 907,912 (C.A.9 1973) (emphasis added), cert. denied, 416 U.S. 959,94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Determining the weight and credibility of witness testimony, therefore, has long been held to be the `part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.' Aetna Life Ins. Co. v. Ward, 140 U.S. 76, 88,11 S.Ct. 720, 724-725, 35 L.Ed. 371 (1891)". United States v. Scheffer
(1997), 523 U.S. 303, 313, 118 S.Ct. 1261, 1266-1267.
 {¶ 28} Although appellant cross-examined the witnesses, argued that the passage of time had made it improbable that the witness could recall the perpetrator, and further, that the description given was vague, and generalized, the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. State v. Jamison
(1990), 49 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881.
 {¶ 29} The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". State v. Craig (Mar. 23, 2000), Franklin App. No. 99AP-739, citing State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236 Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing State v. Antill *Page 10 
(1964), 176 Ohio St. 61, 67, 197 N.E.2d 548.; State v. Burke, Franklin App. No. 02AP-1238, 2003-Ohio-2889, citing State v. Caldwell (1992),79 Ohio App.3d 667, 607 N.E.2d 1096. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. State v. Jenks (1991),61 Ohio St. 3d 259, 574 N.E. 2d 492.
 {¶ 30} After reviewing the evidence, we cannot say that this is one of the exceptional cases where the evidence weighs heavily against the conviction. The jury did not create a manifest injustice by concluding that appellant was guilty of the crimes charged in the indictment.
 {¶ 31} We conclude the trier of fact, in resolving the conflicts in the evidence, did not create a manifest injustice to require a new trial.
 {¶ 32} Appellant's sole assignment of error is overruled.
 {¶ 33} For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.
 Gwin, J., Hoffman, P.J. and Delaney, J., concur. *Page 11 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed. Costs to appellant. *Page 1