[Cite as *State v. Cavendish*, 2011-Ohio-3481.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. Julie A. Edwards, J. |
| -vs- | Case No. 10-CA-106 |
| KYLE L. CAVENDISH | |
| Defendant-Appellant | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Licking County Court of Common Pleas, Case No. 2010-CR-0196 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | July 11, 2011 |

APPEARANCES:

| | |
|---|---|
| For Plaintiff-Appellee | For Defendant-Appellant |
| BRIAN T. WALTZ<br>Assistant Prosecuting Attorney<br>Licking County Prosecutor's Office<br>20 S. Second St., 4th Floor<br>Newark, Ohio 43055 | ROBERT C. BANNERMAN<br>P.O. Box 77466<br>Columbus, Ohio 43207-0098 |

*Hoffman, J.*

{¶1} Defendant-appellant Kyle L. Cavendish appeals his conviction and sentence entered by the Licking County Court of Common Pleas on one count of robbery, one count of aggravated burglary, and one count of theft, following a jury trial; and one count of weapons under disability, following a bench trial. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE CASE AND FACTS

{¶2} On April 16, 2010, the Licking County Grand Jury indicted Appellant on one count of aggravated robbery, in violation of R.C. 2911.01(A)(1), a felony of the first degree; one count of robbery, in violation of R.C. 2911.02(A)(2), a felony of the second degree; one count of aggravated burglary, in violation of R.C. 2911.11(A)(1) and/or (2), a felony of the first degree; one count of theft, in violation of R.C. 2913.02(A)(1)(B)(6); and one count of weapons under disability, in violation of R.C. 2923.313(A)(2), a felony of the third degree. Counts One, Two, Three, and Four carried attendant firearm specifications.

{¶3} Appellant appeared before the trial court for arraignment on April 27, 2010, and entered a plea of not guilty to the Indictment. Appellant filed a motion to suppress, then subsequently filed a motion in limine on September 20, 2010. Both motions sought to exclude the in-and out-of-court identifications based upon the fact the photographic tattoo identification procedure was unduly suggestive. In his motion in limine, Appellant further argued the photograph of the tattoo would give the jury an improper inference of prior criminal activity by Appellant. The trial court overruled both motions.

{¶4} The jury trial commenced on September 21, 2010. Appellant orally waived his right to jury trial on the weapons under disability charge (Count Five).

{¶5} Detective Mark Brill with the Licking County Sheriff's Office testified he was on duty on July 17, 2009, when he was called to the residence at 7875 Greenmill Road in Johnstown, Licking County, Ohio. The dispatch was based upon a report of a home invasion involving a white male who had stolen some pills and had used a firearm in the commission of the offense. After speaking with the patrol sergeant on the scene, Detective Brill interviewed the victim, Alan Oyer, who provided the officer with a description of the perpetrator. Oyer reported approximately two hundred 80 milligram Oxycontin pills had been taken.[1] After his initial investigation, Detective Brill came up with Appellant as the possible suspect. The detective compiled a photo array which he showed to Oyer. Oyer was unable to identify Appellant. Detective Brill then showed Oyer a picture of Appellant's tattoo. The detective showed Oyer the photograph of the tattoo based upon Oyer's earlier description of the tattoo he had observed on the perpetrator.

{¶6} Over the course of the following weeks, Detective Brill interviewed a number of people, including a second interview with Oyer. Detective Brill stated the case did go cold for some months, but Appellant was ultimately arrested.

{¶7} Alan Oyer testified as a result of arthritis and deterioration of the spine, he takes three 80 milligram Oxycontin pills each day. He has been taking the medication in various dosages for approximately six years. The prescriptions are filled through a mail order pharmacy and Oyer receives a ninety day supply for a total of 270 pills at a time.

---

[1] Oxycontin is sold under the brand name of Oxycodone and is a narcotic pain medicine.

Oyer admitted previously selling some of the medication at a cost of twenty-five dollars per pill.

{¶8} With respect to the incident in question, Oyer testified at approximately 12:30 to 1:00 pm on July 17, 2009, he was watching television when he fell asleep on his couch. Oyer woke to Appellant holding a gun to his face, yelling and demanding Oxycontin. Oyer complied with Appellant's demand. Oyer indicated the front door to his home was locked, and Appellant probably entered the house through the garage, which he had left open. Oyer gave police a general description of Appellant, but did not get a good look at his face because Appellant wore a baseball hat and sunglasses. When Appellant turned to leave, Oyer noticed Appellant had a tattoo on the left side of his neck. Oyer described the tattoo as "kind of like wavy fingers going up above – right up towards his ear and down below on his shoulders." Trial Tr. at 163. Oyer recalled he could not be one hundred percent sure the photograph of the tattoo Detective Brill showed to him was identical to the tattoo he observed on Appellant's neck.

{¶9} Warren Britt, Oyer's neighbor testified, on July 17, 2009, between 12:30 and 1:00 pm, he and his wife were sitting outside when they observed a black or a dark gray SUV pull into Oyer's driveway. Britt noticed two people in the vehicle. He originally believed the driver was a female as the person had long hair.

{¶10} Terry Poulton, testified he was buying Oxycontin pills from Melissa Hendren, the sister of Amanda Freed, his ex-girlfriend. In July, 2009, Poulton, Freed, Hendren, and Appellant were all using Oxycontin. Sometime prior to July 17, 2009, Appellant and his girlfriend Kaitlynd Norman were at Poulton and Freed's apartment when Appellant discussed "hitting a lick", i.e., committing a robbery. Shortly after the

robbery Appellant was again at Poulton and Freed's apartment. Appellant admitted robbing Alan Oyer of Oxycontin, and indicated he used Ben Johnson's gray SUV in the commission of the crime. Appellant also told Poulton Oyer asked him to leave some of the pills, and Appellant stated he had done so. Poulton recalled Appellant carried a large number of pills in a clear plastic bag when he (Appellant) arrived at Poulton's apartment. Appellant gave Poulton approximately thirty pills. Poulton testified neither he nor Benjamin Johnson had tattoos on their neck.

{¶11} After hearing all the evidence and deliberating, the jury found Appellant guilty of one count of robbery, one count of aggravated burglary, and one count of theft, but not guilty of one count of aggravated robbery. The jury made special findings as to Counts Two, Three, and Four, determining Appellant did not have a firearm on or about his person or under his control at the time of the commission of the offenses. Following a bench trial, the trial court found Appellant guilty of having weapons under disability. The trial court sentenced Appellant to an aggregate term of imprisonment of fifteen years. The trial court merged Counts Two and Four for purposes of sentencing.

{¶12} It is from this conviction and sentence Appellant appeals, raising the following assignments of error:

{¶13} "I. THE TRIAL COURT ERRED BY FAILING TO GRANT APPELLANT'S MOTION TO SUPPRESS AND RELATED MOTION IN LIMINE TO EXCLUDE.

{¶14} "II. APPELLANT'S CONVICTIONS WERE INCONSISTENT AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶15}** "III. WAS APPELLANT'S CONVICTION AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."[2]

I

**{¶16}** In his first assignment of error, Appellant submits the trial court erred in overruling his motion to suppress and motion in limine because the police procedure in showing Alan Oyer a photograph of his tattoo was impermissibly suggestive and prejudiced his identification.

**{¶17}** Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8. When considering a motion to suppress, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of a witness. Id. Accordingly, this Court is bound to accept the trial court's findings of fact if supported by competent, credible evidence. *State v. Rhude* (1993), 91 Ohio App.3d 623, 626; *State v. Guysinger* (1993), 86 Ohio App.3d 592, 594.

**{¶18}** "Due process requires suppression of pre-trial identification of a suspect only if the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification. *Neil v. Biggers* (1972), 409 U.S. 188, 196-97, 93 S.Ct. 375, 34 L.Ed.2d 401. To establish a due process violation, a defendant must prove that the out of court confrontation was 'unnecessarily suggestive and conducive to irreparable mistaken identification.' *Stovall v. Denno* (1967), 388 U.S. 293,

---

[2] Appellant's third assignment of error is stated as set forth above in Appellant's Brief under the heading of "Assignments of Error." However, in the body of the Brief, the assignment of error reads: "THE PROSECUTION'S STATEMENTS DURING CLOSING DENIED APPELLANT DUE PROCESS AND VIOLATED HIS FIFTH AMENDMENT RIGHTS". Appellant argues accordingly.

302, 87 S.Ct. 1967, 18 L.Ed.2d 1199. However, even where the identification procedure is suggestive, so long as the challenged identification itself is reliable, it is still admissible. *State v. Moody* (1978), 55 Ohio St.2d 64, 377 N.E.2d 1008. See *Manson v. Brathwaite* (1977), 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140, ('reliability is the linchpin in determining the admissibility of identification testimony').

{¶19} Assuming, arguendo, the showing of the photograph of Appellant's tattoo was unnecessarily suggestive, we find Appellant was not prejudiced by the procedure because Oyer never identified Appellant as the perpetrator. Oyer provided the police with a description of the perpetrator and his tattoo. However, he admitted before and during trial he could not positively identify Appellant or the tattoo.

{¶20} Appellant's first assignment of error is overruled.

II

{¶21} In his second assignment of error, Appellant argues the verdicts were inconsistent and against the manifest weight of the evidence. Appellant submits the verdicts were inconsistent because the jury made special findings he did not have a firearm on or about his person or under his control during the commission of Counts 2, 3, and 4, but the trial court found him guilty of having weapons under disability, which requires a finding he was in possession of a firearm. We disagree.

{¶22} It is well-established "inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count." *State v. Brown* (1984), 12 Ohio St.3d 147, 149. "Each count in an indictment charges a distinct offense and is independent of all other counts; a jury's decision as to one count is independent of and unaffected by the jury's finding on

another count." *State v. Cope,* Butler App. No. CA2009–11–285, 2010–Ohio–6430, ¶ 69.

**{¶23}** Accordingly, we reject Appellant's argument alleging inconsistent verdicts as it is based on different counts.

**{¶24}** We now turn to Appellant's manifest weight of the evidence challenge. Appellant contends the verdicts were against the manifest weight of the evidence because the State presented only circumstantial evidence implicating Appellant in the crimes.

**{¶25}** When presented with a manifest weight argument, an appellate court engages in a limited weighing of the evidence to determine whether sufficient competent, credible evidence supports the jury's verdict to permit reasonable minds to find guilt beyond a reasonable doubt. *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997-Ohio-52 (noting that "[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony"). Determinations of credibility and weight of the testimony remain within the province of the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The jury may take note of the inconsistencies and resolve them accordingly, "believ[ing] all, part or none of a witness's testimony." *State v. Antill* (1964), 176 Ohio St. 61, 67.

**{¶26}** As set forth in our Statement of the Facts and Case, supra, a man with a distinctive tattoo broke into Alan Oyer's residence, held a gun to Oyer's head, and demanded Oxycontin. Oyer observed a gray SUV, which was subsequently found to

belong to one of Appellant's friends, leaving the area. Terry Poulton overheard Appellant speak of plans to commit a robbery. Appellant arrived at Poulton and Freed's apartment with a large amount of Oxycontin on his person. Appellant described the break-in and his conversation with Oyer to others.

{¶27} Based upon the foregoing and the entire record in this matter, we do not find Appellant's convictions were against the manifest weight of the evidence.

{¶28} Appellant's second assignment of error is overruled.

III

{¶29} In his final assignment of error, Appellant asserts he was denied due process and his Fifth Amendment Rights were violated as a result of prosecutorial misconduct during closing arguments.

{¶30} The test regarding prosecutorial misconduct in closing arguments is "whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." *State v. Smith* (1984), 14 Ohio St.3d 13, 14, 470 N.E.2d 883; *State v. Hessler* (2000), 90 Ohio St.3d 108, 125, 734 N.E.2d 1237.

{¶31} Appellant takes issue with the prosecutor's detailed narrative of the perpetrator's actions of breaking into the Oyer residence, entering through the garage door, opening a screen door into the house, and proceeding to look for Oxycontin, when there was no such evidence presented during the trial. Appellant did not object to the prosecutor's narrative. As such, we review this portion of the assignment of error under a plain error analysis.

{¶32} "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Notice of plain error is to

be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. *State v. Cooperrider* (1983), 4 Ohio St.3d 226, 448 N.E.2d 452. An alleged error does not constitute plain error unless, but for the error, the outcome of the trial clearly would have been otherwise. *State v. Stojetz,* 84 Ohio St.3d 452, 455, 705 N.E.2d 329, 1999-Ohio-464.

**{¶33}** Based upon the evidence presented at trial, we find Appellant is unable to establish the outcome of his trial would have been different but for the prosecutor's closing remarks.

**{¶34}** Appellant also takes issue with the prosecutor's comments about certain pieces of evidence being "uncontradicted", asserting such was an impermissible comment on his decision not to testify.

**{¶35}** "[S]tatements made by the prosecutor to the effect that the evidence against the appellant was uncontradicted and unrefuted [do] not constitute a comment by the prosecutor upon the defendant's failure to testify." *State v. Wade* (1978), 53 Ohio St.2d 182, 186; *State v. Lockett* (1976), 49 Ohio St.2d 48, 65.

**{¶36}** We overrule this portion of Appellant's third assignment of error based upon the holding in *Wade*, supra.

**{¶37}** Appellant's third assignment of error is overruled.

By: Hoffman, J.

Gwin, P.J.  and

Edwards, J. concur

s/ William B. Hoffman
HON. WILLIAM B. HOFFMAN


s/ W. Scott Gwin
HON. W. SCOTT GWIN


s/ Julie A. Edwards
HON. JULIE A. EDWARDS

IN THE COURT OF APPEALS FOR LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

STATE OF OHIO                                 :
                                              :
    Plaintiff-Appellee                    :
                                              :
-vs-                                          :              JUDGMENT ENTRY
                                              :
KYLE L. CAVENDISH                             :
                                              :
    Defendant-Appellant                   :              Case No. 10-CA-106


    For the reasons stated in our accompanying Opinion, the judgment of the Licking

County Court of Common Pleas is affirmed.  Costs to Appellant.


                          s/ William B. Hoffman_____
                          HON. WILLIAM B. HOFFMAN


                          s/ W. Scott Gwin_____
                          HON. W. SCOTT GWIN


                          s/ Julie A. Edwards_____
                          HON. JULIE A. EDWARDS